## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **NICHOLAUS TAYLOR** | § | |
| **Petitioner** | § | |
| | § | |
| **V.** | § | **Civil Action #** _____ |
| | § | |
| **JENELLE ELDEMIRE** | § | |
| **Respondent** | § | |

**VERIFIED PETITION FOR THE RETURN OF THE CHILDREN TO PETITIONER AND PETITION FOR IMMEDIATE ISSUANCE OF SHOW CAUSE ORDER TO RESPONDENT**

### I.   Introduction

1.      This action is brought by **NICHOLAUS TAYLOR** (the "Father") to secure the return of his four-year-old son, **N.T.**, and three-year-old daughter **E.T.**, who were, without Petitioner's consent or acquiescence, wrongfully removed from Jamaica by the child's mother, Respondent, **JENELLE ELDEMIRE,** ("Mother").

2.      This petition is brought pursuant to The Convention on the Civil Aspects of International Children Abduction, done at the Hague on October 25, 1980[1] ("Convention") and the International Children Abduction Remedies Act[2] ("ICARA").   A copy of the Convention and ICARA are attached hereto as **Exhibit A** and **Exhibit B**.   Both Jamaica and the United States are signatories to the Convention.

3.      The objectives of the Convention are:

Article 1 (a):  To secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

Article 1 (b):  To ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

_____

[1] T.I.A.S. No. 11, 670 at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10494 (1986).

[2] 22 U.S.C. §9001 *et. seq.*

4.     The Mother's removal of the children from Jamaica is in breach of the Father's custody rights under Jamaican law.

## II.     **Jurisdiction**

5.     This Court has jurisdiction pursuant to 22 U.S.C. §9003 because this case involves the removal and retention of a child under the age of sixteen from his or her country of habitual residence of Jamaica, and the children are currently located within the jurisdiction of this Court.

6.     The Hague Convention authorizes a federal district court to determine the merits of a claim for the wrongful removal or retention of the children; it does not, however, permit the district court to consider the merits of an underlying custody dispute. Convention, art 6.

## III.     **Statement of Facts**

7.     Petitioner (the "Father") and Respondent (the "Mother") were married on October 17, 2015 in the parish of St. Ann, Jamaica. The parties have lived in Jamaica for over 28 years. They are the parents of **N.T.**, a male child born on December 17, 2017, in Maryland and **E.T.,** a female child born on August 1, 2019, in Washington. Though the children were born in the United States, each child returned to St. Andrew, Jamacia where they continually resided with the Father and the Mother until their abduction.

8.     On March 23, 2022, the Mother, abducted **N.T.** and **E.T.** by wrongfully taking them without Father's knowledge or consent and retaining them in the United States.

9.     The Father has filed before the Central Authority an Application for Assistance under the Hague Convention to return of **N.T.** and **E.T.** to Jamaica.

### IV. Wrongful Removal and Retention of the Child by the Mother

10.     Petitioner, **NICHOLAUS TAYLOR**, has a right of custody of the children within the meaning of Articles Three and Five of the Convention.

11.     The children are four and three years old.  The Convention applies to cases where a child under the age of sixteen (16) years has been removed from his or her habitual residence in breach of the custody rights of the left-behind parent, which the left-behind had been exercising at the time of the wrongful removal or retention of the children.

12.     At the time of the **N.T.'s** and **E.T.'s** wrongful retention, the Father was actually exercising custody rights within the meaning of Articles Three and Five of the Convention.

13.     At the time of **N.T.'s** and **E.T.'s** removal, the children were habitually residing in Jamaica.

14.     The Father has requested the return of the children to Jamaica pursuant to his Application for Assistance under the Hague Convention on the Civil Aspects of International Children Abduction 25 October 1980 through the Central Authority of Jamaica.  A true and correct copy of the Father's Application for Assistance is attached as **Exhibit C**.

15.     The Father has not consented or acquiesced to the children's retention in the United States.  The Mother has wrongfully retained the children in the United States within the meaning of Article 3 of the Convention and continues to wrongfully retain the child in the United States.

16.     The Father believes that the Mother and children are presently in the greater metropolitan area of Houston, Texas.

## V.   Provisional Remedies

18.     ICARA provides that a court "may take or cause to be taken measures under Federal or State Law, as appropriate to protect the well-being of the children involved or to prevent further removal or concealment before the final disposition of the petition." 22 U.S.C. §9004.

19.     The Father requests, for the well-being of the children, that he be given immediate possession of or access to and visitation with the children, pending further hearing in this Court.

20.     Pending further hearing, it is further requested that this Court issue an immediate order prohibiting the removal of **N.T.** and **E.T.** from the jurisdiction of this Court, taking into safe-keeping all of the Mother's and the children's travel documents.

21.     The Father requests that this Court schedule an expedited hearing on the merits of this Petition and order the Mother to appear with the children for the purposes of an initial show cause hearing, as well as for the purposes of surrendering all travel documents and determining possession of and access to the children pending final hearing in this Court.

22.     To this end, Father has filed contemporaneously with this Petition a Motion for Order Prohibiting the Removal of the Children and for Expedited Show Cause Hearing and Final Evidentiary Hearing.

## VI.   Relief Requested

WHEREFORE, Petitioner respectfully request the following relief:

a.      the issuance of an Order prohibiting the removal of the children from the jurisdiction of this Court pending final disposition of this cause of action;

b.      the issuance of an Order requiring the Mother to surrender all travel documents belonging to the Mother and all travel documents belonging to the children pending final disposition of this cause of action;

4

c.  the issuance of an Order providing reasonable periods of possession and/or visitation and access while these proceedings are pending;

d.  the issuance of an Order commanding Respondent to appear in this Court with the children to show cause why the children have been removed from Jamaica and retained in the United States in contravention of the Convention;

e.  the issuance of an Order directing a prompt return of the children to their habitual residence of Jamaica;

f.  the issuance of an Order directing Respondent to pay Petitioner legal costs and fees; and

g.  any such relief as justice and its cause may require.

## VII.   Service

Pursuant to 22 U.S.C. 9003(c), Respondent, **JENELLE ELDEMIRE**, should be personally served wherever she may be found.

## VIII.   Attorney's Fees and Costs

Petitioner shall provide this Court with evidence regarding all expenditures to date incurred by Petitioner as a result of the wrongful removal and/or retention of the children by Respondent.

Petitioner requests that this Court award all costs and fees incurred by Petitioner to recover the children, as required under 22 U.S.C. 9007, reserving jurisdiction over further expenses.

Respectfully submitted,

LAURA DALE & ASSOCIATES, P.C
1800 ST. JAMES PLACE, SUITE 620
HOUSTON, TEXAS 77056
TEL: (713) 600-1717
FAX: (713) 600-1718

By: /s/ Laura D. Dale

LAURA D. DALE
State Bar No. 24030270
eserviceldd@dalefamilylaw.com
NICHOLAS TRAYLOR
State Bar No. 24093278
eservicent@dalefamilylaw.com

**ATTORNEYS FOR RESPONDENT,
NICHOLAUS TAYLOR**

## VERIFICATION

My name is **NICHOLAUS TAYLOR**, my date of birth is [redacted] and my current address is 6-9 Carolyn Close, Graham Heights Kingston 6, Jamaica. I, **NICHOLAUS TAYLOR**, solemnly declare and affirm under the penalties of perjury and the laws of the United States of America that the contents of the foregoing Petition are true to the best of my knowledge, information and belief.

Executed in Jamaica on September  22 , 2022.

NICHOLAUS TAYLOR



**28. CONVENTION ON THE CIVIL ASPECTS OF
INTERNATIONAL CHILD ABDUCTION[1]**

*(Concluded 25 October 1980)*

The States signatory to the present Convention,

Firmly convinced that the interests of children are of paramount importance in matters relating to their custody,

Desiring to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access,

Have resolved to conclude a Convention to this effect, and have agreed upon the following provisions –

CHAPTER I – SCOPE OF THE CONVENTION

## Article 1

The objects of the present Convention are –

*a)*     to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

*b)*     to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

## Article 2

Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention. For this purpose they shall use the most expeditious procedures available.

## Article 3

The removal or the retention of a child is to be considered wrongful where –

*a)*     it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

*b)*     at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph *a)* above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

---

[1] This Convention, including related materials, is accessible on the website of the Hague Conference on Private International Law (www.hcch.net), under "Conventions" or under the "Child Abduction Section". For the full history of the Convention, see Hague Conference on Private International Law, *Actes et documents de la Quatorzième session (1980)*, Tome III, *Child abduction* (ISBN 90 12 03616 X, 481 pp.).

Article 4

The Convention shall apply to any child who was habitually resident in a Contracting State immediately before any breach of custody or access rights. The Convention shall cease to apply when the child attains the age of 16 years.

Article 5

For the purposes of this Convention –
a)      "rights of custody" shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence;
b)      "rights of access" shall include the right to take a child for a limited period of time to a place other than the child's habitual residence.

CHAPTER II — CENTRAL AUTHORITIES

Article 6

A Contracting State shall designate a Central Authority to discharge the duties which are imposed by the Convention upon such authorities.
Federal States, States with more than one system of law or States having autonomous territorial organisations shall be free to appoint more than one Central Authority and to specify the territorial extent of their powers. Where a State has appointed more than one Central Authority, it shall designate the Central Authority to which applications may be addressed for transmission to the appropriate Central Authority within that State.

Article 7

Central Authorities shall co-operate with each other and promote co-operation amongst the competent authorities in their respective States to secure the prompt return of children and to achieve the other objects of this Convention.
In particular, either directly or through any intermediary, they shall take all appropriate measures –
a)      to discover the whereabouts of a child who has been wrongfully removed or retained;
b)      to prevent further harm to the child or prejudice to interested parties by taking or causing to be taken provisional measures;
c)      to secure the voluntary return of the child or to bring about an amicable resolution of the issues;
d)      to exchange, where desirable, information relating to the social background of the child;
e)      to provide information of a general character as to the law of their State in connection with the application of the Convention;
f)      to initiate or facilitate the institution of judicial or administrative proceedings with a view to obtaining the return of the child and, in a proper case, to make arrangements for organising or securing the effective exercise of rights of access;
g)      where the circumstances so require, to provide or facilitate the provision of legal aid and advice, including the participation of legal counsel and advisers;
h)      to provide such administrative arrangements as may be necessary and appropriate to secure the safe return of the child;
i)      to keep each other informed with respect to the operation of this Convention and, as far as possible, to eliminate any obstacles to its application.

CHAPTER III — RETURN OF CHILDREN

Article 8

Any person, institution or other body claiming that a child has been removed or retained in breach of custody rights may apply either to the Central Authority of the child's habitual residence or to the Central Authority of any other Contracting State for assistance in securing the return of the child.
The application shall contain –

a)   information concerning the identity of the applicant, of the child and of the person alleged to have removed or retained the child;

b)   where available, the date of birth of the child;

c)   the grounds on which the applicant's claim for return of the child is based;

d)   all available information relating to the whereabouts of the child and the identity of the person with whom the child is presumed to be.

The application may be accompanied or supplemented by –

e)   an authenticated copy of any relevant decision or agreement;

f)   a certificate or an affidavit emanating from a Central Authority, or other competent authority of the State of the child's habitual residence, or from a qualified person, concerning the relevant law of that State;

g)   any other relevant document.


## Article 9

If the Central Authority which receives an application referred to in Article 8 has reason to believe that the child is in another Contracting State, it shall directly and without delay transmit the application to the Central Authority of that Contracting State and inform the requesting Central Authority, or the applicant, as the case may be.


## Article 10

The Central Authority of the State where the child is shall take or cause to be taken all appropriate measures in order to obtain the voluntary return of the child.


## Article 11

The judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children.

If the judicial or administrative authority concerned has not reached a decision within six weeks from the date of commencement of the proceedings, the applicant or the Central Authority of the requested State, on its own initiative or if asked by the Central Authority of the requesting State, shall have the right to request a statement of the reasons for the delay. If a reply is received by the Central Authority of the requested State, that Authority shall transmit the reply to the Central Authority of the requesting State, or to the applicant, as the case may be.


## Article 12

Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.

The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.

Where the judicial or administrative authority in the requested State has reason to believe that the child has been taken to another State, it may stay the proceedings or dismiss the application for the return of the child.


## Article 13

Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that –

a)   the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention; or

*b)*   there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.
In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.

## Article 14

In ascertaining whether there has been a wrongful removal or retention within the meaning of Article 3, the judicial or administrative authorities of the requested State may take notice directly of the law of, and of judicial or administrative decisions, formally recognised or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable.

## Article 15

The judicial or administrative authorities of a Contracting State may, prior to the making of an order for the return of the child, request that the applicant obtain from the authorities of the State of the habitual residence of the child a decision or other determination that the removal or retention was wrongful within the meaning of Article 3 of the Convention, where such a decision or determination may be obtained in that State. The Central Authorities of the Contracting States shall so far as practicable assist applicants to obtain such a decision or determination.

## Article 16

After receiving notice of a wrongful removal or retention of a child in the sense of Article 3, the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention or unless an application under this Convention is not lodged within a reasonable time following receipt of the notice.

## Article 17

The sole fact that a decision relating to custody has been given in or is entitled to recognition in the requested State shall not be a ground for refusing to return a child under this Convention, but the judicial or administrative authorities of the requested State may take account of the reasons for that decision in applying this Convention.

## Article 18

The provisions of this Chapter do not limit the power of a judicial or administrative authority to order the return of the child at any time.

## Article 19

A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue.

Article 20

The return of the child under the provisions of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.

CHAPTER IV — RIGHTS OF ACCESS

Article 21

An application to make arrangements for organising or securing the effective exercise of rights of access may be presented to the Central Authorities of the Contracting States in the same way as an application for the return of a child.

The Central Authorities are bound by the obligations of co-operation which are set forth in Article 7 to promote the peaceful enjoyment of access rights and the fulfilment of any conditions to which the exercise of those rights may be subject. The Central Authorities shall take steps to remove, as far as possible, all obstacles to the exercise of such rights.

The Central Authorities, either directly or through intermediaries, may initiate or assist in the institution of proceedings with a view to organising or protecting these rights and securing respect for the conditions to which the exercise of these rights may be subject.

CHAPTER V — GENERAL PROVISIONS

Article 22

No security, bond or deposit, however described, shall be required to guarantee the payment of costs and expenses in the judicial or administrative proceedings falling within the scope of this Convention.

Article 23

No legalisation or similar formality may be required in the context of this Convention.

Article 24

Any application, communication or other document sent to the Central Authority of the requested State shall be in the original language, and shall be accompanied by a translation into the official language or one of the official languages of the requested State or, where that is not feasible, a translation into French or English.

However, a Contracting State may, by making a reservation in accordance with Article 42, object to the use of either French or English, but not both, in any application, communication or other document sent to its Central Authority.

Article 25

Nationals of the Contracting States and persons who are habitually resident within those States shall be entitled in matters concerned with the application of this Convention to legal aid and advice in any other Contracting State on the same conditions as if they themselves were nationals of and habitually resident in that State.

Article 26

Each Central Authority shall bear its own costs in applying this Convention.

Central Authorities and other public services of Contracting States shall not impose any charges in relation to applications submitted under this Convention. In particular, they may not require any payment from the applicant towards the costs and expenses of the proceedings or, where applicable, those arising from the participation of legal counsel or advisers. However, they may require the payment of the expenses incurred or to be incurred in implementing the return of the child.

However, a Contracting State may, by making a reservation in accordance with Article 42, declare that it shall not be bound to assume any costs referred to in the preceding paragraph resulting from the participation of legal counsel or advisers or from court proceedings, except insofar as those costs may be covered by its system of legal aid and advice.

Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.

Article 27

When it is manifest that the requirements of this Convention are not fulfilled or that the application is otherwise not well founded, a Central Authority is not bound to accept the application. In that case, the Central Authority shall forthwith inform the applicant or the Central Authority through which the application was submitted, as the case may be, of its reasons.

Article 28

A Central Authority may require that the application be accompanied by a written authorisation empowering it to act on behalf of the applicant, or to designate a representative so to act.

Article 29

This Convention shall not preclude any person, institution or body who claims that there has been a breach of custody or access rights within the meaning of Article 3 or 21 from applying directly to the judicial or administrative authorities of a Contracting State, whether or not under the provisions of this Convention.

Article 30

Any application submitted to the Central Authorities or directly to the judicial or administrative authorities of a Contracting State in accordance with the terms of this Convention, together with documents and any other information appended thereto or provided by a Central Authority, shall be admissible in the courts or administrative authorities of the Contracting States.

Article 31

In relation to a State which in matters of custody of children has two or more systems of law applicable in different territorial units –

a)      any reference to habitual residence in that State shall be construed as referring to habitual residence in a territorial unit of that State;

b)      any reference to the law of the State of habitual residence shall be construed as referring to the law of the territorial unit in that State where the child habitually resides.

Article 32

In relation to a State which in matters of custody of children has two or more systems of law applicable to different categories of persons, any reference to the law of that State shall be construed as referring to the legal system specified by the law of that State.

Article 33

A State within which different territorial units have their own rules of law in respect of custody of children shall not be bound to apply this Convention where a State with a unified system of law would not be bound to do so.

Article 34

This Convention shall take priority in matters within its scope over the *Convention of 5 October 1961 concerning the powers of authorities and the law applicable in respect of the protection of minors*, as between Parties to both Conventions. Otherwise the present Convention shall not restrict the application of an international instrument in force between the State of origin and the State addressed or other law of the State addressed for the purposes of obtaining the return of a child who has been wrongfully removed or retained or of organising access rights.

Article 35

This Convention shall apply as between Contracting States only to wrongful removals or retentions occurring after its entry into force in those States.
Where a declaration has been made under Article 39 or 40, the reference in the preceding paragraph to a Contracting State shall be taken to refer to the territorial unit or units in relation to which this Convention applies.

Article 36

Nothing in this Convention shall prevent two or more Contracting States, in order to limit the restrictions to which the return of the child may be subject, from agreeing among themselves to derogate from any provisions of this Convention which may imply such a restriction.

CHAPTER VI – FINAL CLAUSES

Article 37

The Convention shall be open for signature by the States which were Members of the Hague Conference on Private International Law at the time of its Fourteenth Session.
It shall be ratified, accepted or approved and the instruments of ratification, acceptance or approval shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

Article 38

Any other State may accede to the Convention.
The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.
The Convention shall enter into force for a State acceding to it on the first day of the third calendar month after the deposit of its instrument of accession.

The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. Such a declaration will also have to be made by any Member State ratifying, accepting or approving the Convention after an accession. Such declaration shall be deposited at the Ministry of Foreign Affairs of the Kingdom of the Netherlands; this Ministry shall forward, through diplomatic channels, a certified copy to each of the Contracting States.

The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the first day of the third calendar month after the deposit of the declaration of acceptance.

Article 39

Any State may, at the time of signature, ratification, acceptance, approval or accession, declare that the Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect at the time the Convention enters into force for that State.

Such declaration, as well as any subsequent extension, shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

Article 40

If a Contracting State has two or more territorial units in which different systems of law are applicable in relation to matters dealt with in this Convention, it may at the time of signature, ratification, acceptance, approval or accession declare that this Convention shall extend to all its territorial units or only to one or more of them and may modify this declaration by submitting another declaration at any time.

Any such declaration shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands and shall state expressly the territorial units to which the Convention applies.

Article 41

Where a Contracting State has a system of government under which executive, judicial and legislative powers are distributed between central and other authorities within that State, its signature or ratification, acceptance or approval of, or accession to this Convention, or its making of any declaration in terms of Article 40 shall carry no implication as to the internal distribution of powers within that State.

Article 42

Any State may, not later than the time of ratification, acceptance, approval or accession, or at the time of making a declaration in terms of Article 39 or 40, make one or both of the reservations provided for in Article 24 and Article 26, third paragraph. No other reservation shall be permitted.

Any State may at any time withdraw a reservation it has made. The withdrawal shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

The reservation shall cease to have effect on the first day of the third calendar month after the notification referred to in the preceding paragraph.

Article 43

The Convention shall enter into force on the first day of the third calendar month after the deposit of the third instrument of ratification, acceptance, approval or accession referred to in Articles 37 and 38.

Thereafter the Convention shall enter into force –
(1)     for each State ratifying, accepting, approving or acceding to it subsequently, on the first day of the third calendar month after the deposit of its instrument of ratification, acceptance, approval or accession;
(2)     for any territory or territorial unit to which the Convention has been extended in conformity with Article 39 or 40, on the first day of the third calendar month after the notification referred to in that Article.


Article 44

The Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 43 even for States which subsequently have ratified, accepted, approved or acceded to it.
If there has been no denunciation, it shall be renewed tacitly every five years.
Any denunciation shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands at least six months before the expiry of the five year period. It may be limited to certain of the territories or territorial units to which the Convention applies.
The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.


Article 45

The Ministry of Foreign Affairs of the Kingdom of the Netherlands shall notify the States Members of the Conference, and the States which have acceded in accordance with Article 38, of the following –
(1)     the signatures and ratifications, acceptances and approvals referred to in Article 37;
(2)     the accessions referred to in Article 38;
(3)     the date on which the Convention enters into force in accordance with Article 43;
(4)     the extensions referred to in Article 39;
(5)     the declarations referred to in Articles 38 and 40;
(6)     the reservations referred to in Article 24 and Article 26, third paragraph, and the withdrawals referred to in Article 42;
(7)     the denunciations referred to in Article 44.


In witness whereof the undersigned, being duly authorised thereto, have signed this Convention.

Done at The Hague, on the 25th day of October, 1980, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Kingdom of the Netherlands, and of which a certified copy shall be sent, through diplomatic channels, to each of the States Members of the Hague Conference on Private International Law at the date of its Fourteenth Session.

## *22 USCS § 9001*

Current through Public Law 117-30, approved July 29, 2021, excepting Part V of Subtitle A of Title 10, as added by Public Law 116-283 (effective 1/1/2022).

*United States Code Service  >  TITLE 22. FOREIGN RELATIONS AND INTERCOURSE (Chs. 1 — 107)  >  CHAPTER 97. INTERNATIONAL CHILD ABDUCTION REMEDIES (§§ 9001 — 9011)*

# § 9001. Findings and declarations

**(a) Findings.** The Congress makes the following findings:

**(1)** The international abduction or wrongful retention of children is harmful to their well-being.

**(2)** Persons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention.

**(3)** International abductions and retentions of children are increasing, and only concerted cooperation pursuant to an international agreement can effectively combat this problem.

**(4)** The *Convention on the Civil Aspects of International Child Abduction*, done at The Hague on October 25, 1980, establishes legal rights and procedures for the prompt return of children who have been wrongfully removed or retained, as well as for securing the exercise of visitation rights. Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies. The Convention provides a sound treaty framework to help resolve the problem of international abduction and retention of children and will deter such wrongful removals and retentions.

**(b) Declarations.** The Congress makes the following declarations:

**(1)** It is the purpose of this Act to establish procedures for the implementation of the Convention in the United States.

**(2)** The provisions of this Act are in addition to and not in lieu of the provisions of the Convention.

**(3)** In enacting this Act the Congress recognizes—

**(A)** the international character of the Convention; and

**(B)** the need for uniform international interpretation of the Convention.

**(4)** The Convention and this Act empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims.

# History

**HISTORY:**

Act April 29, 1988, *P. L. 100-300*, § 2, *102 Stat. 437*.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

22 USCS § 9001

---

**End of Document**

## *22 USCS § 9002*

Current through Public Law 117-30, approved July 29, 2021, excepting Part V of Subtitle A of Title 10, as added by Public Law 116-283 (effective 1/1/2022).

*United States Code Service  >  TITLE 22. FOREIGN RELATIONS AND INTERCOURSE (Chs. 1 — 107)  >  CHAPTER 97. INTERNATIONAL CHILD ABDUCTION REMEDIES (§§ 9001 — 9011)*

# § 9002. Definitions

For the purposes of this Act—

**(1)** the term "applicant" means any person who, pursuant to the Convention, files an application with the United States Central Authority or a Central Authority of any other party to the Convention for the return of a child alleged to have been wrongfully removed or retained or for arrangements for organizing or securing the effective exercise of rights of access pursuant to the Convention;

**(2)** the term "Convention" means the *Convention on the Civil Aspects of International Child Abduction*, done at The Hague on October 25, 1980;

**(3)** the term "Parent Locator Service" means the service established by the Secretary of Health and Human Services under section 453 of the Social Security Act (*42 U.S.C. 653*);

**(4)** the term "petitioner" means any person who, in accordance with this Act, files a petition in court seeking relief under the Convention;

**(5)** the term "person" includes any individual, institution, or other legal entity or body;

**(6)** the term "respondent" means any person against whose interests a petition is filed in court, in accordance with this Act, which seeks relief under the Convention;

**(7)** the term "rights of access" means visitation rights;

**(8)** the term "State" means any of the several States, the District of Columbia, and any commonwealth, territory, or possession of the United States; and

**(9)** the term "United States Central Authority" means the agency of the Federal Government designated by the President under section 7(a) [*22 USCS § 9006(a)*].

# History

**HISTORY:**

Act April 29, 1988, *P. L. 100-300*, § 3, *102 Stat. 438*.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

**End of Document**

## 22 USCS § 9003

Current through Public Law 117-30, approved July 29, 2021, excepting Part V of Subtitle A of Title 10, as added by Public Law 116-283 (effective 1/1/2022).

*United States Code Service  >  TITLE 22. FOREIGN RELATIONS AND INTERCOURSE (Chs. 1 — 107)  >  CHAPTER 97. INTERNATIONAL CHILD ABDUCTION REMEDIES (§§ 9001 — 9011)*

# § 9003. Judicial remedies

**(a) Jurisdiction of the courts.** The courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention.

**(b) Petitions.** Any person seeking to initiate judicial proceedings under the Convention for the return of a child or for arrangements for organizing or securing the effective exercise of rights of access to a child may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed.

**(c) Notice.** Notice of an action brought under subsection (b) shall be given in accordance with the applicable law governing notice in interstate child custody proceedings.

**(d) Determination of case.** The court in which an action is brought under subsection (b) shall decide the case in accordance with the Convention.

**(e) Burdens of proof.**

**(1)** A petitioner in an action brought under subsection (b) shall establish by a preponderance of the evidence—

**(A)** in the case of an action for the return of a child, that the child has been wrongfully removed or retained within the meaning of the Convention; and

**(B)** in the case of an action for arrangements for organizing or securing the effective exercise of rights of access, that the petitioner has such rights.

**(2)** In the case of an action for the return of a child, a respondent who opposes the return of the child has the burden of establishing—

**(A)** by clear and convincing evidence that one of the exceptions set forth in article 13b or 20 of the Convention applies; and

**(B)** by a preponderance of the evidence that any other exception set forth in article 12 or 13 of the Convention applies.

**(f) Application of the Convention.** For purposes of any action brought under this Act—

**(1)** the term "authorities", as used in article 15 of the Convention to refer to the authorities of the state of the habitual residence of a child, includes courts and appropriate government agencies;

**(2)** the terms "wrongful removal or retention" and "wrongfully removed or retained", as used in the Convention, include a removal or retention of a child before the entry of a custody order regarding that child; and

**(3)** the term "commencement of proceedings", as used in article 12 of the Convention, means, with respect to the return of a child located in the United States, the filing of a petition in accordance with subsection (b) of this section.

22 USCS § 9003

**(g) Full faith and credit.** Full faith and credit shall be accorded by the courts of the States and the courts of the United States to the judgment of any other such court ordering or denying the return of a child, pursuant to the Convention, in an action brought under this Act.

**(h) Remedies under the Convention not exclusive.** The remedies established by the Convention and this Act shall be in addition to remedies available under other laws or international agreements.

# History

**HISTORY:**

Act April 29, 1988, *P. L. 100-300*, § 4, *102 Stat. 438*.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

End of Document

## *22 USCS § 9004*

Current through Public Law 117-30, approved July 29, 2021, excepting Part V of Subtitle A of Title 10, as added by Public Law 116-283 (effective 1/1/2022).

*United States Code Service > TITLE 22. FOREIGN RELATIONS AND INTERCOURSE (Chs. 1 — 107) > CHAPTER 97. INTERNATIONAL CHILD ABDUCTION REMEDIES (§§ 9001 — 9011)*

# § 9004. Provisional remedies

**(a) Authority of courts.** In furtherance of the objectives of article 7(b) and other provisions of the Convention, and subject to the provisions of subsection (b) of this section, any court exercising jurisdiction of an action brought under section 4(b) of this Act [42 USCS § 11630(b)] may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition.

**(b) Limitation on authority.** No court exercising jurisdiction of an action brought under section 4(b) [*22 USCS § 9003(b)*] may, under subsection (a) of this section, order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied.

# History

**HISTORY:**

Act April 29, 1988, *P. L. 100-300*, § 5, *102 Stat. 439*.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

**End of Document**

## *22 USCS § 9005*

Current through Public Law 117-30, approved July 29, 2021, excepting Part V of Subtitle A of Title 10, as added by Public Law 116-283 (effective 1/1/2022).

*United States Code Service  >  TITLE 22. FOREIGN RELATIONS AND INTERCOURSE (Chs. 1 — 107)  >  CHAPTER 97. INTERNATIONAL CHILD ABDUCTION REMEDIES (§§ 9001 — 9011)*

## § 9005. Admissibility of documents

With respect to any application to the United States Central Authority, or any petition to a court under section 4 [*22 USCS § 9003*], which seeks relief under the Convention, or any other documents or information included with such application or petition or provided after such submission which relates to the application or petition, as the case may be, no authentication of such application, petition, document, or information shall be required in order for the application, petition, document, or information to be admissible in court.

## History

**HISTORY:**

Act April 29, 1988, *P. L. 100-300*, § 6, *102 Stat. 439*.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

**End of Document**

## *22 USCS § 9006*

Current through Public Law 117-30, approved July 29, 2021, excepting Part V of Subtitle A of Title 10, as added by Public Law 116-283 (effective 1/1/2022).

*United States Code Service  >  TITLE 22. FOREIGN RELATIONS AND INTERCOURSE (Chs. 1 — 107)  >  CHAPTER 97. INTERNATIONAL CHILD ABDUCTION REMEDIES (§§ 9001 — 9011)*

# § 9006. United States Central Authority

**(a) Designation.** The President shall designate a Federal agency to serve as the Central Authority for the United States under the Convention.

**(b) Functions.** The functions of the United States Central Authority are those ascribed to the Central Authority by the Convention and this Act.

**(c) Regulatory authority.** The United States Central Authority is authorized to issue such regulations as may be necessary to carry out its functions under the Convention and this Act.

**(d) Obtaining information from Parent Locator Service.** The United States Central Authority may, to the extent authorized by the Social Security Act [*42 USCS §§ 301* et seq.], obtain information from the Parent Locator Service.

**(e) Grant authority.** The United States Central Authority is authorized to make grants to, or enter into contracts or agreements with, any individual, corporation, other Federal, State, or local agency, or private entity or organization in the United States for purposes of accomplishing its responsibilities under the Convention and this Act.

**(f) Limited liability of private entities acting under the direction of the United States Central Authority.**

    **(1)**Limitation on liability. Except as provided in paragraphs (2) and (3), a private entity or organization that receives a grant from or enters into a contract or agreement with the United States Central Authority under subsection (e) of this section for purposes of assisting the United States Central Authority in carrying out its responsibilities and functions under the Convention and this Act, including any director, officer, employee, or agent of such entity or organization, shall not be liable in any civil action sounding in tort for damages directly related to the performance of such responsibilities and functions as defined by the regulations issued under subsection (c) of this section that are in effect on October 1, 2004.

    **(2)**Exception for intentional, reckless, or other misconduct. The limitation on liability under paragraph (1) shall not apply in any action in which the plaintiff proves that the private entity, organization, officer, employee, or agent described in paragraph (1), as the case may be, engaged in intentional misconduct or acted, or failed to act, with actual malice, with reckless disregard to a substantial risk of causing injury without legal justification, or for a purpose unrelated to the performance of responsibilities or functions under this Act.

    **(3)**Exception for ordinary business activities. The limitation on liability under paragraph (1) shall not apply to any alleged act or omission related to an ordinary business activity, such as an activity involving general administration or operations, the use of motor vehicles, or personnel management.

# History

22 USCS § 9006

**HISTORY:**

Act April 29, 1988, *P. L. 100-300*, § 7, *102 Stat. 439*; Oct. 21, 1998, *P. L. 105-277*, Div G, Subdiv B, Title XXII, Ch 1, § 2213, *112 Stat. 2681*-812; Oct. 25, 2004, *P. L. 108-370*, § 2, *118 Stat. 1750*.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM) All rights reserved.

**End of Document**

## *22 USCS § 9007*

Current through Public Law 117-30, approved July 29, 2021, excepting Part V of Subtitle A of Title 10, as added by Public Law 116-283 (effective 1/1/2022).

*United States Code Service  >  TITLE 22. FOREIGN RELATIONS AND INTERCOURSE (Chs. 1 — 107)  >  CHAPTER 97. INTERNATIONAL CHILD ABDUCTION REMEDIES (§§ 9001 — 9011)*

## § 9007. Costs and fees

(a) **Administrative costs.** No department, agency, or instrumentality of the Federal Government or of any State or local government may impose on an applicant any fee in relation to the administrative processing of applications submitted under the Convention.

(b) **Costs incurred in civil actions.**

(1) Petitioners may be required to bear the costs of legal counsel or advisors, court costs incurred in connection with their petitions, and travel costs for the return of the child involved and any accompanying persons, except as provided in paragraphs (2) and (3).

(2) Subject to paragraph (3), legal fees or court costs incurred in connection with an action brought under section 4 [*22 USCS § 9003*] shall be borne by the petitioner unless they are covered by payments from Federal, State, or local legal assistance or other programs.

(3) Any court ordering the return of a child pursuant to an action brought under section 4 [*22 USCS § 9003*] shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

## History

**HISTORY:**

Act April 29, 1988, *P. L. 100-300*, § 8, *102 Stat. 440*.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

End of Document

## *22 USCS § 9008*

Current through Public Law 117-30, approved July 29, 2021, excepting Part V of Subtitle A of Title 10, as added by Public Law 116-283 (effective 1/1/2022).

*United States Code Service  >  TITLE 22. FOREIGN RELATIONS AND INTERCOURSE (Chs. 1 — 107)  >  CHAPTER 97. INTERNATIONAL CHILD ABDUCTION REMEDIES (§§ 9001 — 9011)*

# § 9008. Collection, maintenance, and dissemination of information

**(a) In general.** In performing its functions under the Convention, the United States Central Authority may, under such conditions as the Central Authority prescribes by regulation, but subject to subsection (c), receive from or transmit to any department, agency, or instrumentality of the Federal Government or of any State or foreign government, and receive from or transmit to any applicant, petitioner, or respondent, information necessary to locate a child or for the purpose of otherwise implementing the Convention with respect to a child, except that the United States Central Authority—

**(1)** may receive such information from a Federal or State department, agency, or instrumentality only pursuant to applicable Federal and State statutes; and

**(2)** may transmit any information received under this subsection notwithstanding any provision of law other than this Act.

**(b) Requests for information.** Requests for information under this section shall be submitted in such manner and form as the United States Central Authority may prescribe by regulation and shall be accompanied or supported by such documents as the United States Central Authority may require.

**(c) Responsibility of government entities.** Whenever any department, agency, or instrumentality of the United States or of any State receives a request from the United States Central Authority for information authorized to be provided to such Central Authority under subsection (a), the head of such department, agency, or instrumentality shall promptly cause a search to be made of the files and records maintained by such department, agency, or instrumentality in order to determine whether the information requested is contained in any such files or records. If such search discloses the information requested, the head of such department, agency, or instrumentality shall immediately transmit such information to the United States Central Authority, except that any such information the disclosure of which—

**(1)** would adversely affect the national security interests of the United States or the law enforcement interests of the United States or of any State; or

**(2)** would be prohibited by *section 9 of title 13, United States Code*;

shall not be transmitted to the Central Authority. The head of such department, agency, or instrumentality shall, immediately upon completion of the requested search, notify the Central Authority of the results of the search, and whether an exception set forth in paragraph (1) or (2) applies. In the event that the United States Central Authority receives information and the appropriate Federal or State department, agency, or instrumentality thereafter notifies the Central Authority that an exception set forth in paragraph (1) or (2) applies to that information, the Central Authority may not disclose that information under subsection (a).

**(d) Information available from Parent Locator Service.** To the extent that information which the United States Central Authority is authorized to obtain under the provisions of subsection (c) can be obtained through the Parent Locator Service, the United States Central Authority shall first seek to obtain such information from the Parent Locator Service, before requesting such information directly under the provisions of subsection (c) of this section.

22 USCS § 9008

**(e) Recordkeeping.** The United States Central Authority shall maintain appropriate records concerning its activities and the disposition of cases brought to its attention.

## History

**HISTORY:**

Act April 29, 1988, *P. L. 100-300*, § 9, *102 Stat. 440*.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

**End of Document**

## *22 USCS § 9009*

Current through Public Law 117-30, approved July 29, 2021, excepting Part V of Subtitle A of Title 10, as added by Public Law 116-283 (effective 1/1/2022).

*United States Code Service  >  TITLE 22. FOREIGN RELATIONS AND INTERCOURSE (Chs. 1 — 107)  >  CHAPTER 97. INTERNATIONAL CHILD ABDUCTION REMEDIES (§§ 9001 — 9011)*

## § 9009. Office of Children's Issues

**(a) Director requirements.** The Secretary of State shall fill the position of Director of the Office of Children's Issues of the Department of State (in this section referred to as the "Office") with an individual of senior rank who can ensure long-term continuity in the management and policy matters of the Office and has a strong background in consular affairs.

**(b) Case officer staffing.** Effective April 1, 2000, there shall be assigned to the Office of Children's Issues of the Department of State a sufficient number of case officers to ensure that the average caseload for each officer does not exceed 75.

**(c) Embassy contact.** The Secretary of State shall designate in each United States diplomatic mission an employee who shall serve as the point of contact for matters relating to international abductions of children by parents. The Director of the Office shall regularly inform the designated employee of children of United States citizens abducted by parents to that country.

**(d) Reports to parents.**

    **(1)** In general. Except as provided in paragraph (2), beginning 6 months after the date of enactment of this Act [enacted Nov. 29, 1999], and at least once every 6 months thereafter, the Secretary of State shall report to each parent who has requested assistance regarding an abducted child overseas. Each such report shall include information on the current status of the abducted child's case and the efforts by the Department of State to resolve the case.

    **(2)** Exception. The requirement in paragraph (1) shall not apply in a case of an abducted child if—

        **(A)** the case has been closed and the Secretary of State has reported the reason the case was closed to the parent who requested assistance; or

        **(B)** the parent seeking assistance requests that such reports not be provided.

## History

HISTORY:

Act Nov. 29, 1999, *P. L. 106-113*, Div B, § 1000(a)(7), *113 Stat. 1536.*

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

## *22 USCS § 9010*

Current through Public Law 117-30, approved July 29, 2021, excepting Part V of Subtitle A of Title 10, as added by Public Law 116-283 (effective 1/1/2022).

*United States Code Service  >  TITLE 22. FOREIGN RELATIONS AND INTERCOURSE (Chs. 1 — 107)  >  CHAPTER 97. INTERNATIONAL CHILD ABDUCTION REMEDIES (§§ 9001 — 9011)*

## § 9010. Interagency coordinating group

The Secretary of State, the Secretary of Health and Human Services, and the Attorney General shall designate Federal employees and may, from time to time, designate private citizens to serve on an interagency coordinating group to monitor the operation of the Convention and to provide advice on its implementation to the United States Central Authority and other Federal agencies. This group shall meet from time to time at the request of the United States Central Authority. The agency in which the United States Central Authority is located is authorized to reimburse such private citizens for travel and other expenses incurred in participating at meetings of the interagency coordinating group at rates not to exceed those authorized under subchapter I of chapter 57 of title 5, United States Code [*5 USCS §§ 5701* et seq.], for employees of agencies.

## History

**HISTORY:**

Act April 29, 1988, *P. L. 100-300*, § 10, *102 Stat. 441*.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

**End of Document**

## *22 USCS § 9011*

Current through Public Law 117-30, approved July 29, 2021, excepting Part V of Subtitle A of Title 10, as added by Public Law 116-283 (effective 1/1/2022).

*United States Code Service  >  TITLE 22. FOREIGN RELATIONS AND INTERCOURSE (Chs. 1 — 107)  >  CHAPTER 97. INTERNATIONAL CHILD ABDUCTION REMEDIES (§§ 9001 — 9011)*

# § 9011. Authorization of appropriations

There are authorized to be appropriated for each fiscal year such sums as may be necessary to carry out the purposes of the Convention and this Act.

# History

**HISTORY:**

Act April 29, 1988, *P. L. 100-300*, § 12, *102 Stat. 442*.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

**End of Document**



PRINCIPAL

Lemar Neale *LLb (Hons)*

CONSULTANT

Georgia Hamilton *B.A. (Hons) LLb (Hons)*

**BY HAND**

July 29, 2022

<u>**URGENT & IMMEDIATE**</u>

**Jamaica Central Authority**
Child Protection & Family Services Agency
48 Duke Street
Kingston

<u>**Attention:**</u>   **Ms Maxine Bagalue**

Dear Sirs:

<u>**Re:**   **Application for Return of Children Wrongfully Removed from Jamaica**</u>

We act on behalf of Mr Nicholaus Taylor.

Our client is requesting the urgent assistance of your offices, as Central Authority under the Hague Convention on the Civil Aspects of International Child Abduction, to have his children, Nathaniel Taylor and Emma Taylor, returned to Jamaica.

We are instructed that the children were wrongfully removed from Jamaica by their mother, Jenelle Eldemire Taylor, on March 23, 2022 and are being retained in the United States. She has since issued divorce proceedings against our client and is seeking conservatorship of the children in Texas, in the 308th Judicial District Court of Harris County, Texas with Cause No. 202232336, that was filed on May 31, 2022. We have enclosed a copy of the Citation and Petition for Divorce.

Our client has commenced proceedings in the Supreme Court on July 26, 2022 for custody of the children. We are of the view that, as the children were ordinarily resident or habitually residing in Jamaica prior to their removal the to United States, the Jamaican courts are best suited to determine the custody of the children. We intend to file an urgent application for an interim custody order in the Supreme Court. We have enclosed a copy of the Fixed Date Claim Form and Affidavit of Nicholaus Taylor in Support of Fixed Date Claim Form.

**Jamaica Central Authority**                                                        **Page 2**

Child Protection & Family Services Agency

Re: *Application for Return of Children...*                                         July 29, 2022

In support of our client's application, we have enclosed the following documents:

1. Jamaica Central Authority Application under the Hague Convention on the Civil Aspects of International Child Abduction dated July 28, 2022 (one copy in relation to each child);

2. Authorization to Release Case Information dated July 28, 2022;

3. Voluntary Return Letter Acknowledgement dated July 28, 2022; and

4. Hague Convention Attorney Network Assistance, 2022 dated July 29, 2022.

We thought it necessary to set out the documents which accompany item No. 1 above which are as follows:

1. Copy Jamaican and US Passports (information page) of both Nathaniel and Emma;

2. Copy Birth Certificates for both Nathaniel and Emma;

3. Photographs of our client, Jenelle Eldemire Taylor, Nathaniel and Emma;

4. Copy of our client's Driver's Licence;

5. Copy Marriage Certificate.

We therefore seek your urgent assistance in engaging the US Central Authority who we trust will bring this matter and the relevant documents to the attention of the 308th Judicial District Court of Harris County, Texas, before that court makes any order concerning the children.

Should you require further information or assistance, please do not hesitate to contact our offices.

Thanking you for your attention.

Yours faithfully,
**NEA | LEX**

**Per**
      **Lemar Neale**

CAUSE NO. 202232336

COPY OF PLEADING PROVIDED BY PLT

RECEIPT No: 952691
TRACKING #: 83031693

Plaintiff: ELDEMIRE, JENELLE

In The 308th
Judicial District Court of
Harris County, Texas

vs.

Defendant: TAYLOR, NICHOLAUS

Houston, Texas

## CITATION – NON RESIDENT

**THE STATE OF TEXAS**
**County of Harris**

**To:**  **TAYLOR, NICHOLAUS**
6 CAROLYN CLOSE APT 13
GRAHAM HEIGHTS KINGSTON 8
OR WHERE HE MAY BE FOUND

Attached is a copy of: ORIGINAL PETITION FOR DIVORCE

This instrument was filed on 5/31/2022 12:00:00 AM, in the above cited cause number and court. The instrument attached describes the claim against you.

**YOU HAVE BEEN SUED.** You may employ an attorney. If you or your attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration date of 20 days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

This citation was issued on  June 7, 2022, under my hand and seal of said court.



Issued at the request of:
YOUNG, DENISE S.
6140 HIGHWAY 6, SUITE 93
MISSOURI CITY, TX  77459
713-894-2203

Bar Number: 24053567

Marilyn Burgess, District Clerk
Harris County, Texas
201 Caroline, Houston Texas 77002
(PO Box 4651, Houston, Texas 77210)

Generated By: PATRICIA GONZALEZ

Tracking Number: 83031693

**CAUSE NUMBER: 202232336**

| | |
|---|---|
| PLAINTIFF: ELDEMIRE, JENELLE | In the 308th |
| vs. | Judicial District Court of |
| DEFENDANT: TAYLOR, NICHOLAUS | Harris County, Texas |

## OFFICER - AUTHORIZED PERSON RETURN

Came to hand at _____ o'clock ____. M. On the _____ day of _____, 20_____.
Executed at

(Address)_____

_____ in _____ County at o'clock ____.   M.   On   the   _____   day   of
_____, 20 _____, by

Delivering to _____defendant, in person, a true copy of this
Citation together with the accompanying _____ copy (ies) of the _____. Petition
attached thereto and I endorsed on said copy of the Citation the date of delivery.

To certify which I affix my hand officially this _____day of _____,
20___.

Fees $_____

_____                By_____
                Affiant                                                               Deputy

On this day, _____, known to me to be the person whose
signature appears on the foregoing return, personally appeared. After being by me duly sworn, he/she stated that
this citation was executed by him/her in the exact manner recited on the return.

SWORN TO AND SUBSCRIBED BEFORE ME, On this _____ day of _____,
20___.

_____
                Notary Public

5/31/2022 12:48 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 64978246
By: Patricia Gonzalez
Filed: 5/31/2022 12:48 PM

**NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA.**

CAUSE NO. _____

| | |
|---|---|
| IN THE MATTER OF THE<br>MARRIAGE OF<br><br>JENELLE ELDEMIRE<br>AND<br>NICHOLAUS TAYLOR<br><br>AND IN THE INTEREST OF<br>N       T      AND E<br>  T      , CHILDREN | § IN THE DISTRICT COURT<br>§<br>§<br>§<br>§      _____ JUDICIAL DISTRICT<br>§<br>§<br>§<br>§ HARRIS COUNTY, TEXAS<br>§ |

## ORIGINAL PETITION FOR DIVORCE

*Level of Discovery*

    1. Pursuant to Rule 190 of the Texas Rules of Civil Procedure, discovery is intended to be conducted in this suit under Level 2.

*Parties*

    2. This suit is brought by Jenelle Eldemire, Petitioner, against Nicholaus Taylor, Respondent, seeking dissolution of their marriage and resolution of issues affecting the parent-child relationship.

    3. Jenelle Eldemire. The last three numbers of Jenelle Eldemire's Texas driver's license number are 359. The last three numbers of Jenelle Eldemire's Social Security number are 195.

*Service of Citation*

    4. Service of citation is requested on Nicholaus Taylor at 6 Carolyn Close, Apt 13, Graham Heights Kingston 8.

*Divorce Jurisdiction*

    5. Jenelle Eldemire has been a domiciliary of this state for the preceding six-month period and a resident of Harris County for the preceding ninety-day period.

Eldemire, Jenelle

6. Jenelle Eldemire is a resident or domiciliary of this state at the time this suit for dissolution is filed. Nicholaus Taylor is domiciled in another state or nation. Personal jurisdiction may be exercised over Nicholaus Taylor because Wife currently lives in Texas

*Jurisdiction for Suit Affecting Parent-Child Relationship*

7. The children affected by this suit reside in this state as a result of the acts or directives of Nicholaus Taylor.

*Dates of Marriage and Separation*

8. Jenelle Eldemire and Nicholaus Taylor married on or about October 17, 2015 in Jamaica, Jamaica and separated on or about February 01, 2021.

*Grounds for Divorce*

9. The marriage has become insupportable because of discord or a conflict of personalities between Jenelle Eldemire and Nicholaus Taylor that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation.

10. Nicholaus Taylor is guilty of cruelty toward Jenelle Eldemire of a nature that renders further living together insupportable.

### Children

*Children of the Marriage*

11. Jenelle Eldemire and Nicholaus Taylor are parents of the following children born or adopted of this marriage who are under 18 years of age or who are otherwise entitled to support as provided by Chapter 154 of the Texas Family Code:

> Name: N█████ T████
> Gender: Male
> SSN (last 3): 262
> Birth Date: ████/2017
> Home State: Texas
>
> Name: E█████ T████
> Gender: Female
> SSN (last 3): 458

Birth Date: ▮▮▮/2019

Home State: Texas

*No Continuing Jurisdiction*

12. No court has continuing jurisdiction of the suit affecting the parent-child relationship.

*Court-Ordered Relationships*

13. There are no court-ordered relationships for the children of this suit.

*UCCJEA Statement*

14. Not all parties to this suit reside in Texas. The information required under Section 152.209 of the Texas Family Code is given in an affidavit attached to this Petition.

*Health Insurance*

15. The information required under Section 154.181(b) and Section 154.1815 of the Texas Family Code will be filed with this Court before any hearing on Temporary Orders or a Final Order.

*Children's Property*

16. Jenelle Eldemire states that there is no property of value owned or possessed by the children the subject of the suit.

*No Protective Order*

17. No protective order under Title 4 of the Texas Family Code or Chapter 7A of the Texas Code of Criminal Procedure, or order for emergency protection under Article 17.292 of the Texas Code of Criminal Procedure is in effect in regard to a party to this suit or a child of a party to this suit, and no applications for such orders are pending before the Court.

### Conservatorship

*Appointment of Joint Managing Conservators*

18. It is in the best interest of the children that Jenelle Eldemire and Nicholaus Taylor be appointed as joint managing conservators of the children. Jenelle Eldemire petitions the Court to appoint Jenelle Eldemire and Nicholaus Taylor as joint managing conservators of Nathaniel

Eldemire, Jenelle

Taylor and Emma-Jae Taylor with all the rights and duties of a parent appointed as a conservator of a child.

*Primary Residence Designation*

19. Jenelle Eldemire petitions this Court to designate her the conservator who has the exclusive right to determine the primary residence of the children without regard to geographic location.

## Possession and Access

*Electronic Communication*

20. Jenelle Eldemire petitions this Court to order reasonable periods of electronic communication with the children to supplement the conservator's periods of possession of the children.

*Prevention of International Abduction*

21. Jenelle Eldemire petitions this Court to determine under Section 153.501 of the Texas Family Code whether it is necessary for this Court to take one or more of the measures described by Section 153.503 of the Texas Family Code to protect the children from the risk of abduction by Nicholaus Taylor.

*History of Domestic Violence*

22. Nicholaus Taylor has a history or pattern of committing family violence during the two years preceding the date of the filing of the suit. Jenelle Eldemire petitions this Court to deny, restrict, or limit the possession of the children by Nicholaus Taylor. If this Court finds that awarding Nicholaus Taylor access to the children would not endanger the children's physical health or emotional welfare and would be in the best interest of the children, and renders a possession order that is designed to protect the safety and well-being of the children and any other person who has been a victim of family violence committed by Nicholaus Taylor, Jenelle Eldemire petitions that: the periods of access be continuously supervised by an entity or person chosen by this Court; the exchange of possession of the children occur in a protective setting; Nicholaus Taylor abstain from the consumption of alcohol or a controlled substance, as defined by Chapter 481 of the Texas Health and Safety Code, within 12 hours prior to or during the period of access to the children; and Nicholaus Taylor attend and complete a battering

intervention and prevention program as provided by Article 42.141 of the Texas Code of Criminal Procedure, or if such a program is not available, complete a course of treatment under Texas Family Code Section 153.010.

## Court-Ordered Support

23. Pursuant to Chapter 154 of the Texas Family Code, Jenelle Eldemire petitions the Court to order Nicholaus Taylor to make payments for the support of the children, including medical and dental support, in the manner specified by the Court. Jenelle Eldemire further petitions the Court to order that income be withheld from the disposable earnings of Nicholaus Taylor. Jenelle Eldemire petitions the Court to order that on the death of Nicholaus Taylor, Nicholaus Taylor's child support obligation will not terminate, but continue as an obligation to the children named in the support order as required by Section 154.013 of the Texas Family Code.

## Property of the Parties

*Division of Marital Estate*

24. Jenelle Eldemire petitions this Court to order a division of the estate of the parties in a manner that this Court deems just and right, having due regard for the rights of each party and any children of the marriage.

## Spousal Maintenance

25. Jenelle Eldemire petitions this Court to order Nicholaus Taylor to pay her maintenance in an amount and for a duration as permitted by Chapter 8 of the Texas Family Code because she will lack sufficient property, including her separate property, on dissolution of the marriage to provide for her minimum reasonable needs.

## Temporary Relief

*Combined Family Code Temporary Restraining Order and Mutual Injunction*

26. Jenelle Eldemire petitions this Court to dispense with the issuance of a bond, grant a temporary restraining order without notice to Nicholaus Taylor for the preservation of the property of the parties and the protection of the parties as necessary and, after notice and hearing, render an order granting a temporary mutual injunction for the preservation of the property and protection of the parties as deemed necessary and equitable and including, but not limited to, an order prohibiting the parties from engaging in any of the following conduct:

a.  intentionally communicating in person or in any other manner, including by telephone or another electronic voice transmission, video chat, in writing or electronic messaging, with the other party by use of vulgar, profane, obscene, or indecent language or in a coarse or offensive manner, with intent to annoy or alarm the other party;

b.  threatening the other party, in person or in any other manner, including by telephone or another electronic voice transmission, video chat, in writing, or electronic messaging, to take unlawful action against any person, intending by this action to annoy or alarm the other party;

c.  placing a telephone call, anonymously, at an unreasonable hour, in an offensive and repetitious manner, or without a legitimate purpose of communication with the intent to annoy or alarm the other party;

d.  intentionally, knowingly, or recklessly causing bodily injury to the other party or to a child of either party;

e.  threatening the other party or a child of either party with imminent bodily injury;

f.  intentionally, knowingly, or recklessly destroying, removing, concealing, encumbering, transferring, or otherwise harming or reducing the value of the property of the parties or a protected party with intent to obstruct the Court's authority to divide the parties' estate in a manner that this Court deems just and right, having due regard for the rights of each party and any children of the marriage;

g.  intentionally falsifying a writing or record, including an electronic record, relating to the property of either party;

h.  intentionally misrepresenting or refusing to disclose to the other party or to the Court, on proper request, the existence, amount, or location of any tangible or intellectual property of the parties or either party, including electronically stored or recorded information;

i.  intentionally or knowingly damaging or destroying the tangible or intellectual property of the parties or either party, including electronically stored or recorded information;

Eldemire, Jenelle

j. intentionally or knowingly tampering with the tangible or intellectual property of the parties or either party, including electronically stored or recorded information, causing pecuniary loss or substantial inconvenience to the other party;

k. except as specifically authorized by order of this Court:

  i. selling, transferring, assigning, mortgaging, encumbering, or in any other manner alienating any of the property of the parties or either party, regardless of whether the property is:

   (1) personal property, real property, or intellectual property; or

   (2) separate or community property;

  ii. incurring any debt, other than legal expenses in connection with this suit for dissolution of marriage;

  iii. withdrawing money from any checking or savings account in any financial institution for any purpose;

  iv. spending any money in either party's possession or subject to either party's control for any purpose;

  v. withdrawing or borrowing in any manner for any purpose from any retirement, profit-sharing, pension, death, or other employee benefit plan, employee savings plan, individual retirement account, or Keogh account of either party;

  vi. withdrawing or borrowing in any manner all or any part of the cash surrender value of a life insurance policy on the life of either party or a child of the parties;

l. entering any safe deposit box in the name of or subject to the control of the parties or either party, whether individually or jointly with others;

m. changing or in any manner altering the beneficiary designation on any life insurance policy on the life of either party or a child of the parties;

n. canceling, altering, failing to renew or pay premiums on, or in any manner affecting the level of coverage that existed at the time the suit was filed of, any life, casualty, automobile, or health insurance policies insuring the parties' property or persons including a child of the parties;

o. opening or diverting mail, email, or any other electronic communication addressed to the other party;

Eldemire, Jenelle

p.  signing or endorsing the other party's name on any negotiable instrument, check, or draft, such as tax refunds, insurance payments, and dividend, or attempting to negotiate any negotiable instrument payable to the other party without the personal signature of the other party;

q.  taking any action to terminate or limit credit or charge credit cards in the name of the other party;

r.  discontinuing or reducing the withholding for federal income taxes from either party's wages or salary;

s.  destroying, disposing of, or altering any financial records of the parties, including a canceled check, deposit slip, and other records from a financial institution, a record of credit purchases or cash advances, a tax return, and a financial statement;

t.  destroying, disposing of, or altering any e-mail, text message, video message, or chat message or other electronic data or electronically stored information relevant to the subject matter of the suit for dissolution of marriage, regardless of whether the information is stored on a hard drive, in a removable storage device, in cloud storage, or in another electronic storage medium;

u.  modifying, changing, or altering the native format or metadata of any electronic data or electronically stored information relevant to the subject matter of the suit for dissolution of marriage, regardless of whether the information is stored on a hard drive, in a removable storage device, in cloud storage, or in another electronic storage medium;

v.  deleting any data or content from any social network profile used or created by either party or a child of the parties;

w.  using any password or personal identification number to gain access to the other party's email account, bank account, social media account, or any other electronic account;

x.  terminating or in any manner affecting the service of water, electricity, gas, telephone, cable television, or other contractual service, including security, pest control, landscaping, or yard maintenance at the residence of either party, or in any manner attempting to withdraw any deposit paid in connection with any of those services;

y. excluding the other party from the use and enjoyment of a specifically identified residence of the other party;

z. entering, operating, or exercising control over a motor vehicle in the possession of the other party; and

aa. harming, threatening, or interfering with the care, custody, or control of a pet or companion animal.

*Combined Family Code Temporary Restraining Order and Mutual Injunction*

27. Jenelle Eldemire petitions this Court to dispense with the issuance of a bond, grant a temporary restraining order without notice to Nicholaus Taylor for the safety and welfare of the children and, after notice and hearing, that this Court may render an appropriate order, including the granting of a temporary mutual injunction for the safety and welfare of the children as deemed necessary and equitable and including, but not limited to, an order prohibiting the parties from engaging in any of the following conduct:

a. disturbing the peace of the children or another party;

b. disrupting or withdrawing the children from the school or day-care facility where the children are presently enrolled, without the written agreement of both parents or an order of this Court;

c. hiding or secreting the children from the other party or changing the children's current place of abode without the written agreement of both parents or an order of this Court;

d. making disparaging remarks regarding the other party or the other party's family in the presence or within the hearing of the children;

e. removing the children beyond a geographical area identified by this Court, acting directly or in concert with others, without the written agreement of both parties or an order of this Court;

f. consumption of alcohol or a controlled substance, as defined by Chapter 481 of the Texas Health and Safety Code, within 12 hours prior to or during the period of access to the children; and

g. being present within the same residence as the children between 9:00 pm and 7:00 am with an unrelated adult with whom a party has an intimate relationship.

*Family Code Temporary Orders and Mutual Injunction*

28. Jenelle Eldemire petitions this Court, after notice and hearing, to dispense with the issuance of a bond and render an appropriate order granting a temporary mutual injunction for the preservation of the property and protection of the parties as deemed necessary and equitable, including, but not limited to, an order prohibiting the parties from engaging in any of the following conduct:

a.  intentionally communicating in person or in any other manner, including by telephone or another electronic voice transmission, video chat, in writing or electronic messaging, with the other party by use of vulgar, profane, obscene, or indecent language or in a coarse or offensive manner, with intent to annoy or alarm the other party;

b.  threatening the other party, in person or in any other manner, including by telephone or another electronic voice transmission, video chat, in writing, or electronic messaging, to take unlawful action against any person, intending by this action to annoy or alarm the other party;

c.  placing a telephone call, anonymously, at an unreasonable hour, in an offensive and repetitious manner, or without a legitimate purpose of communication with the intent to annoy or alarm the other party;

d.  intentionally, knowingly, or recklessly causing bodily injury to the other party or to a child of either party;

e.  threatening the other party or a child of either party with imminent bodily injury;

f.  intentionally, knowingly, or recklessly destroying, removing, concealing, encumbering, transferring, or otherwise harming or reducing the value of the property of the parties or a protected party with intent to obstruct the Court's authority to divide the parties' estate in a manner that this Court deems just and right, having due regard for the rights of each party and any children of the marriage;

g.  intentionally falsifying a writing or record, including an electronic record, relating to the property of either party;

h.  intentionally misrepresenting or refusing to disclose to the other party or to the Court, on proper request, the existence, amount, or location of any tangible or intellectual property of the parties or either party, including electronically stored or recorded information;

i. intentionally or knowingly damaging or destroying the tangible or intellectual property of the parties or either party, including electronically stored or recorded information;

j. intentionally or knowingly tampering with the tangible or intellectual property of the parties or either party, including electronically stored or recorded information, causing pecuniary loss or substantial inconvenience to the other party;

k. except as specifically authorized by an order of this Court:

    i. selling, transferring, assigning, mortgaging, encumbering, or in any other manner alienating any of the property of the parties or either party, regardless of whether the property is:

        (1) personal property, real property, or intellectual property; or

        (2) separate or community property;

    ii. incurring any debt, other than legal expenses in connection with this suit for dissolution of marriage;

    iii. withdrawing money from any checking or savings account in any financial institution for any purpose;

    iv. spending any money in either party's possession or subject to either party's control for any purpose;

    v. withdrawing or borrowing in any manner for any purpose from any retirement, profit-sharing, pension, death, or other employee benefit plan, employee savings plan, individual retirement account, or Keogh account of either party;

    vi. withdrawing or borrowing in any manner all or any part of the cash surrender value of a life insurance policy on the life of either party or a child of the parties;

l. entering any safe deposit box in the name of or subject to the control of the parties or either party, whether individually or jointly with others;

m. changing or in any manner altering the beneficiary designation on any life insurance policy on the life of either party or a child of the parties;

n. canceling, altering, failing to renew or pay premiums on, or in any manner affecting the level of coverage that existed at the time the suit was filed of, any life, casualty, automobile, or health insurance policies insuring the parties' property or persons including a child of the parties;

Eldemire, Jenelle

o. opening or diverting mail, email, or any other electronic communication addressed to the other party;

p. signing or endorsing the other party's name on any negotiable instrument, check, or draft, such as tax refunds, insurance payments, and dividend, or attempting to negotiate any negotiable instrument payable to the other party without the personal signature of the other party;

q. taking any action to terminate or limit credit or charge credit cards in the name of the other party;

r. discontinuing or reducing the withholding for federal income taxes from either party's wages or salary;

s. destroying, disposing of, or altering any financial records of the parties, including a canceled check, deposit slip, and other records from a financial institution, a record of credit purchases or cash advances, a tax return, and a financial statement;

t. destroying, disposing of, or altering any e-mail, text message, video message, or chat message or other electronic data or electronically stored information relevant to the subject matter of the suit for dissolution of marriage, regardless of whether the information is stored on a hard drive, in a removable storage device, in cloud storage, or in another electronic storage medium;

u. modifying, changing, or altering the native format or metadata of any electronic data or electronically stored information relevant to the subject matter of the suit for dissolution of marriage, regardless of whether the information is stored on a hard drive, in a removable storage device, in cloud storage, or in another electronic storage medium;

v. deleting any data or content from any social network profile used or created by either party or a child of the parties;

w. using any password or personal identification number to gain access to the other party's email account, bank account, social media account, or any other electronic account;

x. terminating or in any manner affecting the service of water, electricity, gas, telephone, cable television, or other contractual service, including security, pest control, landscaping, or yard maintenance at the residence of either party, or in any

manner attempting to withdraw any deposit paid in connection with any of those services;

y. excluding the other party from the use and enjoyment of a specifically identified residence of the other party;

z. entering, operating, or exercising control over a motor vehicle in the possession of the other party;

aa. harming, threatening, or interfering with the care, custody, or control of a pet or companion animal;

bb. interfering with the other party's spending of funds for reasonable and necessary living expenses; and

cc. interfering with the other party's engaging in acts reasonable and necessary to conduct that party's usual business and occupation.

*Family Code Temporary Orders and Mutual Injunction*

29. Jenelle Eldemire petitions this Court, after notice and hearing, to dispense with the issuance of a bond, and render an appropriate order, including the granting of a temporary mutual injunction for the safety and welfare of the children as deemed necessary and equitable, including, but not limited to, an order prohibiting the parties from engaging in any of the following conduct:

a. disturbing the peace of the children or another party;

b. disrupting or withdrawing the children from the school or day-care facility where the children are presently enrolled without the written agreement of both parents or an order of this Court;

c. hiding or secreting the children from the other party or changing the children's current place of abode without the written agreement of both parents or an order of this Court;

d. making disparaging remarks regarding the other party or the other party's family in the presence or within the hearing of the children;

e. removing the children beyond a geographical area identified by this Court, acting directly or in concert with others without the written agreement of both parties or an order of this Court;

Eldemire, Jenelle

f. consumption of alcohol or a controlled substance, as defined by Chapter 481 of the Texas Health and Safety Code, within 12 hours prior to or during the period of access to the children; and

g. being present within the same residence as the children between 9:00 pm and 7:00 am with an unrelated adult with whom a party has an intimate relationship.

*Temporary Orders Regarding Children*

30. Jenelle Eldemire petitions this Court, after notice and hearing, to render a temporary order including, but not limited to, the following:

a. appointing Jenelle Eldemire and Nicholaus Taylor as temporary joint managing conservators of the children;

b. designating Jenelle Eldemire as the conservator who has the temporary exclusive right to determine the primary residence of N████ T████ and E████ T████; and

c. ordering Nicholaus Taylor to pay temporary child support.

**Other Requested Relief**

*Attorney's Fees*

31. Jenelle Eldemire engaged Denise S. Young, a licensed attorney, to prepare and prosecute this suit. As part of the just and right division of the community estate, as well as for the prosecution of this suit affecting the parent child relationship, Jenelle Eldemire petitions this Court to render judgment for reasonable attorney's fees, expenses, and costs through trial and appeal in her favor and against Nicholaus Taylor, and order the judgment to be paid directly to Denise S. Young. Jenelle Eldemire petitions the Court to award post-judgment interest as permitted by law.

**Prayer**

Jenelle Eldemire prays the Court issue citation and notice as required by law and grant a divorce and all other relief requested in this Petition.

Jenelle Eldemire prays that this Court immediately grant a temporary restraining order restraining the parties, in conformity with the allegations of this Petition, from the acts set forth above, and that, upon notice and hearing, this temporary restraining order be made a temporary mutual injunction.

Jenelle Eldemire prays that this Court, in addition to the temporary restraining order and temporary mutual injunction prayed for above, upon notice and hearing, grant a temporary mutual injunction enjoining the parties from the acts set forth above while this case is pending.

Jenelle Eldemire prays that this Court, upon notice and hearing, grant temporary orders as requested in this Petition.

Jenelle Eldemire prays that she be awarded a judgment against Nicholaus Taylor for reasonable attorney's fees.

Jenelle Eldemire prays for general relief.

Respectfully submitted,

The Law Office of Denise S. Young, PLLC
6140 Highway 6
Suite 93
Missouri City, TX 77459

/s/ Denise S. Young
Denise S. Young
Attorney for Jenelle Eldemire
Bar no: 24053567
Phone: (713) 894-2203
Fax: (713) 770-6182
Email: denise.young@isquiremi.com

Eldemire, Jenelle



# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:** _____   **CURRENT COURT:** _____

**Name(s) of Documents to be served:**  Original Petition for Divorce / Citation

**FILE DATE:** _____  Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:**  Nicholaus Taylor

**Address of Service:**  6 Carolyn Close, Apt 13

**City, State & Zip:**  Graham Heights Kingston 8          (Or where he may be found)

**Agent (if applicable)** _____

**TYPE OF SERVICE/PROCESS TO BE ISSUED:** (Check the proper Box)

- [x] **Citation**
- [ ] **Citation by Posting**
- [ ] **Citation by Publication**
- [ ] **Citations Rule 106 Service**
- [ ] **Citation Scire Facias**   **Newspaper** _____
- [ ] **Temporary Restraining Order**
- [ ] **Precept**
- [ ] **Notice**
- [ ] **Protective Order**
- [ ] **Secretary of State Citation ($12.00)**
- [ ] **Capias** (not by E-Issuance)
- [ ] **Attachment** (not by E-Issuance)
- [ ] **Certiorari**
- [ ] **Highway Commission ($12.00)**
- [ ] **Commissioner of Insurance ($12.00)**
- [ ] **Hague Convention ($16.00)**
- [ ] **Garnishment**
- [ ] **Habeas Corpus** (not by E-Issuance)
- [ ] **Injunction**
- [ ] **Sequestration**
- [ ] **Subpoena**
- [ ] **Other (Please Describe)** _____

**(See additional Forms for Post Judgment Service)**

---

**SERVICE BY** (check one):
- [ ] **ATTORNEY PICK-UP (phone)** _____
- [ ] **MAIL to attorney   at:** _____
- [ ] **CONSTABLE**
- [ ] **CERTIFIED MAIL by District Clerk**

- [x] **E-Issuance by District Clerk** **(No Service Copy Fees Charged)**
*Note:* The email registered with EfileTexas.gov must be used to retrieve the E-Issuance Service Documents. Visit www.hcdistrictclerk.com for more instructions.

- [ ] **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____   Phone: _____

- [ ] **OTHER,** *explain* _____

---

**Issuance of Service Requested By:** Attorney/Party Name:  Denise S. Young  Bar # or ID  24053567

Mailing Address: 6140 Highway 6, Suite 93, Missouri City, TX 77459

Phone Number: Office: 713-894-2203   Cell Phone: 281-386-1577



# FIXED DATE CLAIM FORM

## IN THE SUPREME COURT OF JUDICATURE OF JAMAICA

### IN FAMILY DIVISION

**CLAIM NO.**  SU 2022 FD



MATRIMONIAL
JUL 26 2022
SUPREME COURT

**IN THE MATTER** of the Children (Guardianship & Custody) Act.

**AND**

**IN THE MATTER** of an Application for Custody, Care and Control of minor children N and E.

| BETWEEN | NICHOLAUS TAYLOR | CLAIMANT |
| --- | --- | --- |
| AND | JENELLE TAYLOR | DEFENDANT |

The Claimant, **NICHOLAUS TAYLOR,** Certified Officer/Motor Vehicle Examiner of 6 – 9 Carolyn Close, Graham Heights, Barbican, Kingston 8 in the parish of Saint Andrew claims against the Defendant, **JENELLE TAYLOR** the following relief, namely:

1. The Claimant be granted sole custody, care and control of the minor children N and E born on ▮▮▮▮▮▮, 2017 and ▮▮▮▮▮▮ 2019, respectively with reasonable access to the Defendant on such terms as this Honourable Court considers in the best interest of the children.

2. Costs to be costs in the claim.

3. Such further or other relief as this Honourable Court deems necessary or appropriate.

I, **Nicholaus Taylor**, certify that all the facts set out in this Fixed Date Claim Form are true to the best of my knowledge, information and belief.

Dated the 22 day of July , 2022

_____

**NICHOLAUS TAYLOR**

**NEA | LEX**
**CLAIMANT'S ATTORNEYS-AT-LAW**

PER: _____

**LEMAR NEALE**

## NOTICE TO THE DEFENDANT

The first hearing of this claim will take place at the Supreme Court, Public Buildings, King Street, Kingston, on the          day of          2022 at          am/pm.

If you do not attend at that hearing, judgment may be entered against you in accordance with the claim.

If you do attend, the judge may

       (a)    deal with the claim, or

       (b)    give directions for the preparation of the case for a further hearing.

A Particulars of Claim or an Affidavit giving full details of the Claimant's claim should be served on you with this Claim Form. If this has not been done and there is no order permitting the Claimant not to serve the Particulars of Claim or Affidavit you should contact the court immediately.

You should complete the form of Acknowledgement of Service served on you with this Claim Form and deliver it to the registry (address below) so that they receive it within FOURTEEN days of service of this Claim Form on you. The form of Acknowledgement of Service may be completed by you or an Attorney-at-Law, acting for you. See Rules 9.3(1) and 9.4(3).

You should consider obtaining legal advice with regard to this claim. See notes in Form 2A served with this Claim Form.

This Claim Form has no validity if it is not served within Six months of the date below unless it is accompanied by an order extending that time. See Rule 8.14(1).

The Registry is at King Street, Kingston, telephone numbers (876) 922-8300-9, fax (876) 967-0669. The office is open between 9:00 a.m. to 4:00 p.m. Mondays to Thursdays and 9:00 a.m. to 3:00 pm. on Fridays, except on Public Holidays.

**DATED** the  day of          2022

### NEA | LEX

#### Attorneys-at-Law for the Claimant

The Claimant's address for service is that of his Attorneys-at-Law **NEA | LEX** of 94c Old Hope Road, Kingston 6, in the Parish of Saint Andrew.

**FILED by NEA | LEX, Attorneys-at-Law** of 94c Old Hope Road, Kingston 6 in the parish of Saint Andrew, on behalf of the Claimant whose address for service is that of his Attorneys-at-Law **(Attn: Lemar Neale – Atty. No. 5199).** Telephone: (876) 908-0852; (876) 668-3872 Email: info@nealex.pro.



**PRESCRIBED NOTES FOR DEFENDANTS**
**(FIXED DATE CLAIM FORM)**
Form 2A [Rule 8.16(1)(c)]
**This Form is important.**
**When you get this document you should consider getting legal advice**.

The Claimant is seeking an order from the Court as set out in the Claim Form on the basis of the facts or evidence set out in the Particulars of Claim or Affidavit which was served with it. The Claimant will not be entitled to enter Judgment against you without a hearing.

You may:

**A.      Admit the Claim**

If so, you should complete and return the form of Acknowledgement of Service to the registry within **FOURTEEN DAYS** stating this. You may attend the first hearing if you wish to do so.

**B.      Dispute the Claim**

If so, you should complete and return the form of Acknowledgement of Service as under A. You should also file at the registry and serve on the Claimant's Attorney-at-Law (or the Claimant if he has no Attorney-at-Law):

    a)      a Defence if the Claim Form was accompanied by the Claimant's Particulars of Claim, or

    b)      an Affidavit in answer if the Claim Form was accompanied by an Affidavit sworn by or on behalf of the Claimant. See Rule 10.2(2)
          within **FORTY TWO DAYS** of the day on which the Claim Form was served on you. Your Defence or Affidavit must set out briefly **ALL** the facts on which you will rely to dispute the claim made against you.

**C.      Make a Claim against the Claimant**

If so, you should complete and return the form of Acknowledgement of Service as under A. You must file a Particulars of Claim (a counterclaim) setting out full details of what you claim against the Claimant and the facts on which you will rely. This must be done within **FORTY TWO DAYS** of the date on which the claim form was served on you. The Particulars of Claim should set out **ALL** the facts on which you rely in disputing any part of the Claimant's claim against you.

**YOU SHOULD ALSO ATTEND THE FIRST HEARING. IF YOU DO NOT THE JUDGE MAY DEAL WITH THE CLAIM IN YOUR ABSENCE.**

Copies of forms may be obtained form the registry or at www.sc.gov.jm.



# ACKNOWLEDGEMENT OF SERVICE OF
## FIXED DATE CLAIM FORM
### Form 4 [Rule 8.16(1)(a)]

## IN THE SUPREME COURT OF JUDICATURE OF JAMAICA

**CLAIM NO**  SU 2022 FD

BETWEEN        NICHOLAUS TAYLOTR                CLAIMANT

AND            JENELLE TAYLOR                   DEFENDANT

**WARNING:** this form should be completed and returned to the registry at the address below within **FOURTEEN (14) DAYS** of service of the Claim Form on you. See Rules 9.3(1). However, the Claimant will not be entitled to have judgment entered against you except at the first or subsequent hearing of the claim.

| | | |
|---|---|---|
| 1. | Have you received the Claim Form with the above number? | YES/NO |
| 2. | If so, when did you receive it? | __/__/____ |
| 3. | Did you also receive the Claimant's Particulars of Claim or Affidavit in Support ? | YES/NO |
| 4. | If so, on what date did you receive them | __/__/____ |
| 5. | Are your names properly stated on the Claim Form? If not, what are your full names? | YES/NO |
| | ................................................................ | |
| 6. | Do you want to defend the claim? *If so you should file a Defence or Affidavit in answer within 28 days of the service of this Claim Form on you. See Rule 10.3(1)* | YES/NO |
| 7. | Do you admit to the whole of the Claim? | YES/NO |

- 2 -

8. Do you admit any part of the Claim?                                    YES/NO

9. If so how much do you admit?

   ...........................................................

10. What is your own address?         ...........................................

                                      ...........................................

                                      ...........................................

11. What is your address for service?
    *If you are acting in person you must give an address
    to which documents may be sent either from other
    parties or from the Court.  You should also give your
    telephone number and fax number if any.*

                                      ...........................................

                                      ...........................................

                                      ...........................................

       DATED the      day                 202

               Signed ........................................
                      **[Defendant in person]**
                      **[Defendant's attorney-at-law]**

**FILED** by (specify name and address of Attorney-at-Law or firm of Attorneys-at-
Law filing the Acknowledgement of Service].



## <u>DEFENCE</u>
### Form 5 [Rule 8.16(1)(b)]

## IN THE SUPREME COURT OF JUDICATURE OF JAMAICA

**CLAIM NO**    SU 2022 FD

**BETWEEN**    **NICHOLAUS TAYLOR**    **CLAIMANT**

**AND**    **JENELLE TAYLOR**    **DEFENDANT**

I dispute the claim on the following grounds:-

I certify that all the facts set out in my Defence are true to the best of my knowledge information and belief.

DATED the              day of              , 201

Signed ...........................................
Defendant

-2-

## COUNTERCLAIM

I claim against the Claimant
(*set out details of the remedy or relief sought*)


on the following grounds -

I certify that all the facts set out in my counterclaim are true to the best of my
knowledge, information and belief and that I am entitled to the remedy claimed.

Dated the          day of                201

Signed ……………………………………………
Defendant


**FILED** by (specify name and address of Attorney-at-Law or firm of Attorneys-at-
Law filing the Acknowledgement of Service].



# AFFIDAVIT OF NICHOLAUS TAYLOR IN SUPPORT OF WITHOUT NOTICE APPLICATION FOR COURT ORDERS

## IN THE SUPREME COURT OF JUDICATURE OF JAMAICA

**IN FAMILY DIVISION**

CLAIM NO.    02924

SU 2022 FD ~~02294~~



MATRIMONIAL
AUG 0 2 2022
SUPREME COURT

**IN THE MATTER OF** the Children (Guardianship & Custody) Act.

**AND**

**IN THE MATTER OF** an Application for Custody, Care and Control of a minor children N and E.

| | | |
|---|---|---|
| **BETWEEN** | **NICHOLAUS TAYLOR** | **CLAIMANT** |
| **AND** | **JENELLE TAYLOR** | **DEFENDANT** |

I, **NICHOLAUS TAYLOR**, being duly sworn make oath and say as follows:

1.    I reside and have my true place of abode and postal address at 6 – 9 Carolyn Close, Graham Heights, Barbican, Kingston 8 in the parish of Saint Andrew and I am the Claimant herein.

2.    The facts and matters deposed to by me are true to the best of my knowledge, information and belief and are within my own knowledge, save where appear otherwise. Where the facts have been sourced by me from documents or records, I identify those sources.

3.  I crave leave of this Honourable Court to refer to and rely on my previous affidavit sworn on July 22, 2022.

4.  This affidavit is in support of my urgent application for an interim custody order in relation to my children N and E, who I believe is wrongfully removed from the jurisdiction by the Respondent.

5.  On July 23, 2022, the Respondent served me with divorce proceedings which she has commenced in the District Court, Harris County, Texas. In those documents she is seeking conservatorship of N and E. The Respondent has acted dishonestly. She, having commenced proceedings in the Family Court in Jamaica for custody of N and E, later withdrew her claim and caused me to withdraw mine, only to later remove the children to Texas to commence proceedings there. I exhibit and mark **"NT-2"** for identity a copy of the Respondent's Divorce Petition.

6.  N and E were ordinarily resident in Jamaica at the time of their removal to Texas in March 2022 and so I believe that the Jamaican courts are best suited to determine the custody of N and E.

7.  I have therefore sought the assistance of the Child Development Agency with a view to having N and E returned to Jamaica for this court to determine my application for their custody. I am advised by my Attorneys-at-Law and verily believe that the Child Development Agency is the Central Authority under the Hague Convention on the Civil Aspects of International Child Abduction and their role is to assist in securing the return of children who have been wrongfully removed from a country or are being wrongfully retained in another country. I exhibit and mark **"NT-3"** for identity a copy of my application to the Child Development Agency.

8.  I am further advised by my Attorneys-at-Law and verily believe that under the Hague Convention a child is wrongfully removed where there has been a custody order in place for that child made by a court in the country where such child was taken from. Further, where there is no custody order, a child may be wrongfully retained where such an order has been subsequently made for the return of a child and the party who took the child has refused to comply with the order, which amounts to child abduction.

9.  In the circumstances, I am urgently seeking an interim custody order which will assist the Central Authority, the Child Development Agency, in petitioning the court in the United States for the return of N and E so that the Jamaican courts can make an order concerning their custody.

10. I do not have any address for the Respondent and so given the nature of the application and the urgency of it, it is desirable that the order be made without notice to the Respondent.

11. In the circumstances, I humbly pray that this Honourable Court will grant the relief sought in the Without Notice Application for Court Orders filed herein.

Sworn to by **NICHOLAUS TAYLOR**          )

On the 2 day of *August*, 2022          )

At _____          )

In the parish of _____          )          _____

Before me:          )                    **NICHOLAUS TAYLOR**

_____

**JUSTICE OF THE PEACE**          DALE H. JACKSON
**FOR THE PARISH OF:**          Justice of the Peace
                          Kingston, B01423

FILED by **NEA|LEX, Attorneys-at-Law** of 94c Old Hope Road, Kingston 6 in the parish of Saint Andrew, on behalf of the Claimant whose address for service is that of his Attorneys-at-Law **(Attn: Lemar Neale – Atty. No. 5199)**. Telephone: (876) 908-0852; (876) 668-3872 Email: info@nealex.pro.

**"NT-2"**

This is a copy of the documents mentioned and referred to at paragraph 5 of the
Affidavit of Nicholaus Taylor sworn on the 2 day of ~~July 2022~~ ~~2022~~

Sworn to by **NICHOLAUS TAYLOR**        )

On the 5 day of _August_ , 2022        )

At _Supreme Court_        )

In the parish of _Kingston_        )

Before me:        )

_____

**JUSTICE OF THE PEACE**

**FOR THE PARISH OF:**

**NICHOLAUS TAYLOR**

...........................................................
DALE H. JACKSON
Justice of the Peace
Kingston, B01423

5/31/2022 12:48 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 64978246
By: Patricia Gonzalez
Filed: 5/31/2022 12:48 PM

**NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA.**

CAUSE NO. _____

| | | |
|---|---|---|
| IN THE MATTER OF THE **MARRIAGE OF** | § § § | IN THE DISTRICT COURT |
| **JENELLE ELDEMIRE AND NICHOLAUS TAYLOR** | § § § § § | _____ **JUDICIAL DISTRICT** |
| AND IN THE INTEREST OF N████ T█████ AND E████- T████ **CHILDREN** | § § § § | HARRIS COUNTY, TEXAS |

## ORIGINAL PETITION FOR DIVORCE

*Level of Discovery*

    1. Pursuant to Rule 190 of the Texas Rules of Civil Procedure, discovery is intended to be conducted in this suit under Level 2.

*Parties*

    2. This suit is brought by Jenelle Eldemire, Petitioner, against Nicholaus Taylor, Respondent, seeking dissolution of their marriage and resolution of issues affecting the parent-child relationship.

    3. Jenelle Eldemire. The last three numbers of Jenelle Eldemire's Texas driver's license number are 359. The last three numbers of Jenelle Eldemire's Social Security number are 195.

*Service of Citation*

    4. Service of citation is requested on Nicholaus Taylor at 6 Carolyn Close, Apt 13, Graham Heights Kingston 8.

*Divorce Jurisdiction*

    5. Jenelle Eldemire has been a domiciliary of this state for the preceding six-month period and a resident of Harris County for the preceding ninety-day period.

Eldemire, Jenelle

6. Jenelle Eldemire is a resident or domiciliary of this state at the time this suit for dissolution is filed. Nicholaus Taylor is domiciled in another state or nation. Personal jurisdiction may be exercised over Nicholaus Taylor because Wife currently lives in Texas

*Jurisdiction for Suit Affecting Parent-Child Relationship*

7. The children affected by this suit reside in this state as a result of the acts or directives of Nicholaus Taylor.

*Dates of Marriage and Separation*

8. Jenelle Eldemire and Nicholaus Taylor married on or about October 17, 2015 in Jamaica, Jamaica and separated on or about February 01, 2021.

*Grounds for Divorce*

9. The marriage has become insupportable because of discord or a conflict of personalities between Jenelle Eldemire and Nicholaus Taylor that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation.

10. Nicholaus Taylor is guilty of cruelty toward Jenelle Eldemire of a nature that renders further living together insupportable.

### Children

*Children of the Marriage*

11. Jenelle Eldemire and Nicholaus Taylor are parents of the following children born or adopted of this marriage who are under 18 years of age or who are otherwise entitled to support as provided by Chapter 154 of the Texas Family Code:

> Name: Na█████ T███
> Gender: Male
> SSN (last 3): 262
> Birth Date: ███ 2017
> Home State: Texas

> Name: E█████ T███
> Gender: Female
> SSN (last 3): 458

Eldemire, Jenelle

Birth Date: ▮▮▮ /2019

Home State: Texas

*No Continuing Jurisdiction*

12. No court has continuing jurisdiction of the suit affecting the parent-child relationship.

*Court-Ordered Relationships*

13. There are no court-ordered relationships for the children of this suit.

*UCCJEA Statement*

14. Not all parties to this suit reside in Texas. The information required under Section 152.209 of the Texas Family Code is given in an affidavit attached to this Petition.

*Health Insurance*

15. The information required under Section 154.181(b) and Section 154.1815 of the Texas Family Code will be filed with this Court before any hearing on Temporary Orders or a Final Order.

*Children's Property*

16. Jenelle Eldemire states that there is no property of value owned or possessed by the children the subject of the suit.

*No Protective Order*

17. No protective order under Title 4 of the Texas Family Code or Chapter 7A of the Texas Code of Criminal Procedure, or order for emergency protection under Article 17.292 of the Texas Code of Criminal Procedure is in effect in regard to a party to this suit or a child of a party to this suit, and no applications for such orders are pending before the Court.

## Conservatorship

*Appointment of Joint Managing Conservators*

18. It is in the best interest of the children that Jenelle Eldemire and Nicholaus Taylor be appointed as joint managing conservators of the children. Jenelle Eldemire petitions the Court to appoint Jenelle Eldemire and Nicholaus Taylor as joint managing conservators of Nathaniel

Taylor and Emma-Jae Taylor with all the rights and duties of a parent appointed as a conservator of a child.

*Primary Residence Designation*

19. Jenelle Eldemire petitions this Court to designate her the conservator who has the exclusive right to determine the primary residence of the children without regard to geographic location.

## Possession and Access

*Electronic Communication*

20. Jenelle Eldemire petitions this Court to order reasonable periods of electronic communication with the children to supplement the conservator's periods of possession of the children.

*Prevention of International Abduction*

21. Jenelle Eldemire petitions this Court to determine under Section 153.501 of the Texas Family Code whether it is necessary for this Court to take one or more of the measures described by Section 153.503 of the Texas Family Code to protect the children from the risk of abduction by Nicholaus Taylor.

*History of Domestic Violence*

22. Nicholaus Taylor has a history or pattern of committing family violence during the two years preceding the date of the filing of the suit. Jenelle Eldemire petitions this Court to deny, restrict, or limit the possession of the children by Nicholaus Taylor. If this Court finds that awarding Nicholaus Taylor access to the children would not endanger the children's physical health or emotional welfare and would be in the best interest of the children, and renders a possession order that is designed to protect the safety and well-being of the children and any other person who has been a victim of family violence committed by Nicholaus Taylor, Jenelle Eldemire petitions that: the periods of access be continuously supervised by an entity or person chosen by this Court; the exchange of possession of the children occur in a protective setting; Nicholaus Taylor abstain from the consumption of alcohol or a controlled substance, as defined by Chapter 481 of the Texas Health and Safety Code, within 12 hours prior to or during the period of access to the children; and Nicholaus Taylor attend and complete a battering

intervention and prevention program as provided by Article 42.141 of the Texas Code of Criminal Procedure, or if such a program is not available, complete a course of treatment under Texas Family Code Section 153.010.

## Court-Ordered Support

23. Pursuant to Chapter 154 of the Texas Family Code, Jenelle Eldemire petitions the Court to order Nicholaus Taylor to make payments for the support of the children, including medical and dental support, in the manner specified by the Court. Jenelle Eldemire further petitions the Court to order that income be withheld from the disposable earnings of Nicholaus Taylor. Jenelle Eldemire petitions the Court to order that on the death of Nicholaus Taylor, Nicholaus Taylor's child support obligation will not terminate, but continue as an obligation to the children named in the support order as required by Section 154.013 of the Texas Family Code.

## Property of the Parties

*Division of Marital Estate*

24. Jenelle Eldemire petitions this Court to order a division of the estate of the parties in a manner that this Court deems just and right, having due regard for the rights of each party and any children of the marriage.

## Spousal Maintenance

25. Jenelle Eldemire petitions this Court to order Nicholaus Taylor to pay her maintenance in an amount and for a duration as permitted by Chapter 8 of the Texas Family Code because she will lack sufficient property, including her separate property, on dissolution of the marriage to provide for her minimum reasonable needs.

## Temporary Relief

*Combined Family Code Temporary Restraining Order and Mutual Injunction*

26. Jenelle Eldemire petitions this Court to dispense with the issuance of a bond, grant a temporary restraining order without notice to Nicholaus Taylor for the preservation of the property of the parties and the protection of the parties as necessary and, after notice and hearing, render an order granting a temporary mutual injunction for the preservation of the property and protection of the parties as deemed necessary and equitable and including, but not limited to, an order prohibiting the parties from engaging in any of the following conduct:

a. intentionally communicating in person or in any other manner, including by telephone or another electronic voice transmission, video chat, in writing or electronic messaging, with the other party by use of vulgar, profane, obscene, or indecent language or in a coarse or offensive manner, with intent to annoy or alarm the other party;

b. threatening the other party, in person or in any other manner, including by telephone or another electronic voice transmission, video chat, in writing, or electronic messaging, to take unlawful action against any person, intending by this action to annoy or alarm the other party;

c. placing a telephone call, anonymously, at an unreasonable hour, in an offensive and repetitious manner, or without a legitimate purpose of communication with the intent to annoy or alarm the other party;

d. intentionally, knowingly, or recklessly causing bodily injury to the other party or to a child of either party;

e. threatening the other party or a child of either party with imminent bodily injury;

f. intentionally, knowingly, or recklessly destroying, removing, concealing, encumbering, transferring, or otherwise harming or reducing the value of the property of the parties or a protected party with intent to obstruct the Court's authority to divide the parties' estate in a manner that this Court deems just and right, having due regard for the rights of each party and any children of the marriage;

g. intentionally falsifying a writing or record, including an electronic record, relating to the property of either party;

h. intentionally misrepresenting or refusing to disclose to the other party or to the Court, on proper request, the existence, amount, or location of any tangible or intellectual property of the parties or either party, including electronically stored or recorded information;

i. intentionally or knowingly damaging or destroying the tangible or intellectual property of the parties or either party, including electronically stored or recorded information;

j.  intentionally or knowingly tampering with the tangible or intellectual property of the parties or either party, including electronically stored or recorded information, causing pecuniary loss or substantial inconvenience to the other party;

k.  except as specifically authorized by order of this Court:

    i.  selling, transferring, assigning, mortgaging, encumbering, or in any other manner alienating any of the property of the parties or either party, regardless of whether the property is:

        (1)  personal property, real property, or intellectual property; or

        (2)  separate or community property;

    ii.  incurring any debt, other than legal expenses in connection with this suit for dissolution of marriage;

    iii.  withdrawing money from any checking or savings account in any financial institution for any purpose;

    iv.  spending any money in either party's possession or subject to either party's control for any purpose;

    v.  withdrawing or borrowing in any manner for any purpose from any retirement, profit-sharing, pension, death, or other employee benefit plan, employee savings plan, individual retirement account, or Keogh account of either party;

    vi.  withdrawing or borrowing in any manner all or any part of the cash surrender value of a life insurance policy on the life of either party or a child of the parties;

l.  entering any safe deposit box in the name of or subject to the control of the parties or either party, whether individually or jointly with others;

m.  changing or in any manner altering the beneficiary designation on any life insurance policy on the life of either party or a child of the parties;

n.  canceling, altering, failing to renew or pay premiums on, or in any manner affecting the level of coverage that existed at the time the suit was filed of, any life, casualty, automobile, or health insurance policies insuring the parties' property or persons including a child of the parties;

o.  opening or diverting mail, email, or any other electronic communication addressed to the other party;

Eldemire, Jenelle

p.  signing or endorsing the other party's name on any negotiable instrument, check, or draft, such as tax refunds, insurance payments, and dividend, or attempting to negotiate any negotiable instrument payable to the other party without the personal signature of the other party;

q.  taking any action to terminate or limit credit or charge credit cards in the name of the other party;

r.  discontinuing or reducing the withholding for federal income taxes from either party's wages or salary;

s.  destroying, disposing of, or altering any financial records of the parties, including a canceled check, deposit slip, and other records from a financial institution, a record of credit purchases or cash advances, a tax return, and a financial statement;

t.  destroying, disposing of, or altering any e-mail, text message, video message, or chat message or other electronic data or electronically stored information relevant to the subject matter of the suit for dissolution of marriage, regardless of whether the information is stored on a hard drive, in a removable storage device, in cloud storage, or in another electronic storage medium;

u.  modifying, changing, or altering the native format or metadata of any electronic data or electronically stored information relevant to the subject matter of the suit for dissolution of marriage, regardless of whether the information is stored on a hard drive, in a removable storage device, in cloud storage, or in another electronic storage medium;

v.  deleting any data or content from any social network profile used or created by either party or a child of the parties;

w.  using any password or personal identification number to gain access to the other party's email account, bank account, social media account, or any other electronic account;

x.  terminating or in any manner affecting the service of water, electricity, gas, telephone, cable television, or other contractual service, including security, pest control, landscaping, or yard maintenance at the residence of either party, or in any manner attempting to withdraw any deposit paid in connection with any of those services;

y. excluding the other party from the use and enjoyment of a specifically identified residence of the other party;

z. entering, operating, or exercising control over a motor vehicle in the possession of the other party; and

aa. harming, threatening, or interfering with the care, custody, or control of a pet or companion animal.

*Combined Family Code Temporary Restraining Order and Mutual Injunction*

27. Jenelle Eldemire petitions this Court to dispense with the issuance of a bond, grant a temporary restraining order without notice to Nicholaus Taylor for the safety and welfare of the children and, after notice and hearing, that this Court may render an appropriate order, including the granting of a temporary mutual injunction for the safety and welfare of the children as deemed necessary and equitable and including, but not limited to, an order prohibiting the parties from engaging in any of the following conduct:

a. disturbing the peace of the children or another party;

b. disrupting or withdrawing the children from the school or day-care facility where the children are presently enrolled, without the written agreement of both parents or an order of this Court;

c. hiding or secreting the children from the other party or changing the children's current place of abode without the written agreement of both parents or an order of this Court;

d. making disparaging remarks regarding the other party or the other party's family in the presence or within the hearing of the children;

e. removing the children beyond a geographical area identified by this Court, acting directly or in concert with others, without the written agreement of both parties or an order of this Court;

f. consumption of alcohol or a controlled substance, as defined by Chapter 481 of the Texas Health and Safety Code, within 12 hours prior to or during the period of access to the children; and

g. being present within the same residence as the children between 9:00 pm and 7:00 am with an unrelated adult with whom a party has an intimate relationship.

*Family Code Temporary Orders and Mutual Injunction*

28. Jenelle Eldemire petitions this Court, after notice and hearing, to dispense with the issuance of a bond and render an appropriate order granting a temporary mutual injunction for the preservation of the property and protection of the parties as deemed necessary and equitable, including, but not limited to, an order prohibiting the parties from engaging in any of the following conduct:

a. intentionally communicating in person or in any other manner, including by telephone or another electronic voice transmission, video chat, in writing or electronic messaging, with the other party by use of vulgar, profane, obscene, or indecent language or in a coarse or offensive manner, with intent to annoy or alarm the other party;

b. threatening the other party, in person or in any other manner, including by telephone or another electronic voice transmission, video chat, in writing, or electronic messaging, to take unlawful action against any person, intending by this action to annoy or alarm the other party;

c. placing a telephone call, anonymously, at an unreasonable hour, in an offensive and repetitious manner, or without a legitimate purpose of communication with the intent to annoy or alarm the other party;

d. intentionally, knowingly, or recklessly causing bodily injury to the other party or to a child of either party;

e. threatening the other party or a child of either party with imminent bodily injury;

f. intentionally, knowingly, or recklessly destroying, removing, concealing, encumbering, transferring, or otherwise harming or reducing the value of the property of the parties or a protected party with intent to obstruct the Court's authority to divide the parties' estate in a manner that this Court deems just and right, having due regard for the rights of each party and any children of the marriage;

g. intentionally falsifying a writing or record, including an electronic record, relating to the property of either party;

h. intentionally misrepresenting or refusing to disclose to the other party or to the Court, on proper request, the existence, amount, or location of any tangible or intellectual property of the parties or either party, including electronically stored or recorded information;

Eldemire, Jenelle

i.  intentionally or knowingly damaging or destroying the tangible or intellectual property of the parties or either party, including electronically stored or recorded information;

j.  intentionally or knowingly tampering with the tangible or intellectual property of the parties or either party, including electronically stored or recorded information, causing pecuniary loss or substantial inconvenience to the other party;

k.  except as specifically authorized by an order of this Court:

    i.  selling, transferring, assigning, mortgaging, encumbering, or in any other manner alienating any of the property of the parties or either party, regardless of whether the property is:

        (1)  personal property, real property, or intellectual property; or

        (2)  separate or community property;

    ii.  incurring any debt, other than legal expenses in connection with this suit for dissolution of marriage;

    iii.  withdrawing money from any checking or savings account in any financial institution for any purpose;

    iv.  spending any money in either party's possession or subject to either party's control for any purpose;

    v.  withdrawing or borrowing in any manner for any purpose from any retirement, profit-sharing, pension, death, or other employee benefit plan, employee savings plan, individual retirement account, or Keogh account of either party;

    vi.  withdrawing or borrowing in any manner all or any part of the cash surrender value of a life insurance policy on the life of either party or a child of the parties;

l.  entering any safe deposit box in the name of or subject to the control of the parties or either party, whether individually or jointly with others;

m.  changing or in any manner altering the beneficiary designation on any life insurance policy on the life of either party or a child of the parties;

n.  canceling, altering, failing to renew or pay premiums on, or in any manner affecting the level of coverage that existed at the time the suit was filed of, any life, casualty, automobile, or health insurance policies insuring the parties' property or persons including a child of the parties;

Eldemire, Jenelle

o. opening or diverting mail, email, or any other electronic communication addressed to the other party;

p. signing or endorsing the other party's name on any negotiable instrument, check, or draft, such as tax refunds, insurance payments, and dividend, or attempting to negotiate any negotiable instrument payable to the other party without the personal signature of the other party;

q. taking any action to terminate or limit credit or charge credit cards in the name of the other party;

r. discontinuing or reducing the withholding for federal income taxes from either party's wages or salary;

s. destroying, disposing of, or altering any financial records of the parties, including a canceled check, deposit slip, and other records from a financial institution, a record of credit purchases or cash advances, a tax return, and a financial statement;

t. destroying, disposing of, or altering any e-mail, text message, video message, or chat message or other electronic data or electronically stored information relevant to the subject matter of the suit for dissolution of marriage, regardless of whether the information is stored on a hard drive, in a removable storage device, in cloud storage, or in another electronic storage medium;

u. modifying, changing, or altering the native format or metadata of any electronic data or electronically stored information relevant to the subject matter of the suit for dissolution of marriage, regardless of whether the information is stored on a hard drive, in a removable storage device, in cloud storage, or in another electronic storage medium;

v. deleting any data or content from any social network profile used or created by either party or a child of the parties;

w. using any password or personal identification number to gain access to the other party's email account, bank account, social media account, or any other electronic account;

x. terminating or in any manner affecting the service of water, electricity, gas, telephone, cable television, or other contractual service, including security, pest control, landscaping, or yard maintenance at the residence of either party, or in any

Eldemire, Jenelle

manner attempting to withdraw any deposit paid in connection with any of those services;

y. excluding the other party from the use and enjoyment of a specifically identified residence of the other party;

z. entering, operating, or exercising control over a motor vehicle in the possession of the other party;

aa. harming, threatening, or interfering with the care, custody, or control of a pet or companion animal;

bb. interfering with the other party's spending of funds for reasonable and necessary living expenses; and

cc. interfering with the other party's engaging in acts reasonable and necessary to conduct that party's usual business and occupation.

*Family Code Temporary Orders and Mutual Injunction*

29. Jenelle Eldemire petitions this Court, after notice and hearing, to dispense with the issuance of a bond, and render an appropriate order, including the granting of a temporary mutual injunction for the safety and welfare of the children as deemed necessary and equitable, including, but not limited to, an order prohibiting the parties from engaging in any of the following conduct:

a. disturbing the peace of the children or another party;

b. disrupting or withdrawing the children from the school or day-care facility where the children are presently enrolled without the written agreement of both parents or an order of this Court;

c. hiding or secreting the children from the other party or changing the children's current place of abode without the written agreement of both parents or an order of this Court;

d. making disparaging remarks regarding the other party or the other party's family in the presence or within the hearing of the children;

e. removing the children beyond a geographical area identified by this Court, acting directly or in concert with others without the written agreement of both parties or an order of this Court;

Eldemire, Jenelle

f. consumption of alcohol or a controlled substance, as defined by Chapter 481 of the Texas Health and Safety Code, within 12 hours prior to or during the period of access to the children; and

g. being present within the same residence as the children between 9:00 pm and 7:00 am with an unrelated adult with whom a party has an intimate relationship.

*Temporary Orders Regarding Children*

30. Jenelle Eldemire petitions this Court, after notice and hearing, to render a temporary order including, but not limited to, the following:

a. appointing Jenelle Eldemire and Nicholaus Taylor as temporary joint managing conservators of the children;

b. designating Jenelle Eldemire as the conservator who has the temporary exclusive right to determine the primary residence of N███ T███ and E███ T███; and

c. ordering Nicholaus Taylor to pay temporary child support.

**Other Requested Relief**

*Attorney's Fees*

31. Jenelle Eldemire engaged Denise S. Young, a licensed attorney, to prepare and prosecute this suit. As part of the just and right division of the community estate, as well as for the prosecution of this suit affecting the parent child relationship, Jenelle Eldemire petitions this Court to render judgment for reasonable attorney's fees, expenses, and costs through trial and appeal in her favor and against Nicholaus Taylor, and order the judgment to be paid directly to Denise S. Young. Jenelle Eldemire petitions the Court to award post-judgment interest as permitted by law.

**Prayer**

Jenelle Eldemire prays the Court issue citation and notice as required by law and grant a divorce and all other relief requested in this Petition.

Jenelle Eldemire prays that this Court immediately grant a temporary restraining order restraining the parties, in conformity with the allegations of this Petition, from the acts set forth above, and that, upon notice and hearing, this temporary restraining order be made a temporary mutual injunction.

Jenelle Eldemire prays that this Court, in addition to the temporary restraining order and temporary mutual injunction prayed for above, upon notice and hearing, grant a temporary mutual injunction enjoining the parties from the acts set forth above while this case is pending.

Jenelle Eldemire prays that this Court, upon notice and hearing, grant temporary orders as requested in this Petition.

Jenelle Eldemire prays that she be awarded a judgment against Nicholaus Taylor for reasonable attorney's fees.

Jenelle Eldemire prays for general relief.

Respectfully submitted,

The Law Office of Denise S. Young, PLLC
6140 Highway 6
Suite 93
Missouri City, TX 77459


/s/ Denise S. Young
Denise S. Young
Attorney for Jenelle Eldemire
Bar no: 24053567
Phone: (713) 894-2203
Fax: (713) 770-6182
Email: denise.young@isquiremi.com



# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

CASE NUMBER: _____   CURRENT COURT: _____

Name(s) of Documents to be served:   Original Petition for Divorce / Citation _____

**FILE DATE:** _____   Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be**

**Served):**

**Issue Service to:**   Nicholaus Taylor _____

Address of Service:   6 Carolyn Close, Apt 13 _____

City, State & Zip:____   Graham Heights Kingston 8   (Or where he may be found) _____

Agent (if applicable) _____

## TYPE OF SERVICE/PROCESS TO BE ISSUED: (Check the proper Box)

| | | | |
|---|---|---|---|
| ☒ **Citation** | ☐ **Citation by Posting** | ☐ **Citation by Publication** | ☐ **Citations Rule 106 Service** |
| ☐ **Citation Scire Facias** | **Newspaper**_____ | | |
| ☐ **Temporary Restraining Order** | ☐ **Precept** | | ☐ **Notice** |
| ☐ **Protective Order** | | | |
| ☐ **Secretary of State Citation ($12.00)** | ☐ **Capias** (not by E-Issuance) | | ☐ **Attachment** (not by E-Issuance) |
| ☐ **Certiorari** | ☐ **Highway Commission ($12.00)** | | |
| ☐ **Commissioner of Insurance ($12.00)** | ☐ **Hague Convention ($16.00)** | | ☐ **Garnishment** |
| ☐ **Habeas Corpus** (not by E-Issuance) | ☐ **Injunction** | | ☐ **Sequestration** |
| ☐ **Subpoena** | | | |
| ☐ **Other (Please Describe)** _____ | | | |

**(See additional Forms for Post Judgment Service)**

---

**SERVICE BY** *(check one)*:

☐ **ATTORNEY PICK-UP (phone)** _____

☐ **MAIL to attorney   at:** _____

☐ **CONSTABLE**

☐ **CERTIFIED MAIL by District Clerk**

☒ **E-Issuance by District Clerk**
**(No Service Copy Fees Charged)**

*Note:* The email registered with EfileTexas.gov must be
used to retrieve the E-Issuance Service Documents.
Visit www.hcdistrictclerk.com for more instructions.

☐ **CIVIL PROCESS SERVER** - Authorized Person to Pick-up: _____   Phone: _____

☐ **OTHER,** *explain* _____

---

**Issuance of Service Requested By:** Attorney/Party Name: Denise S. Young Bar # or ID 24053567 _____

Mailing Address: 6140 Highway 6, Suite 93, Missouri City, TX 77459 _____

Phone Number: Office: 713-894-2203   Cell Phone: 281-386-1577 _____

"NT-3"

This is a copy of the documents mentioned and referred to at paragraph 7 of the Affidavit of Nicholaus Taylor sworn on the _2_ day of ~~July 2022.~~

Sworn to by **NICHOLAUS TAYLOR** )

On the 2 day of _August_ , 2022 )

At _____ )

In the parish of _____ )      **NICHOLAUS TAYLOR**

Before me: )

**JUSTICE OF THE PEACE**

**FOR THE PARISH OF:**

DALE H. JACKSON
Justice of the Peace
Kingston, B01423



# JAMAICA CENTRAL AUTHORITY (JCA)
## APPLICATION UNDER THE HAGUE CONVENTION
### ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION



### FILL OUT ALL SECTIONS
*Provide information below to the extent that is available.
Please complete **ONE FORM** per child.

This is an application for the [✓] **Return** of [ ] **Access** to the child/children named herein.

**REQUESTING:**   [✓] INDIVIDUAL

[ ] INSTITUTION

[ ] CENTRAL AUTHORITY

**REQUESTED AUTHORITY:** US CENTRAL AUTHORITY

| SECTION 1: IDENTITY OF THE CHILD | | | | | |
|---|---|---|---|---|---|
| **Child's Name:** | | | | | |
| | Last TAYLOR | | First E▇ | | Middle Initial S |
| **Age:** Z | **Date of Birth (dd-mm-yyyy):** ▇-2019 | **Place of Birth:** USA WASHINGTON D.C. | | **Nationality:** USA JAMAICA | **Passport/Identity Card No., if any:** USA PP# 642265297 DAMAGE C15971596 |
| **Habitual Residence ( address before removal or retention):** APT. B 6-9 CAROLYN CLOSE GRAHAM HEIGHTS, KINGSTON 6. | | | | | |
| **Height:** | **Weight:** 20-25 lbs | **Colour of Hair:** BROWN | | **Colour of Eyes:** DARK BROWN | |
| **Describe any other distinguishing feature(s) that may be helpful in identifying the child e.g. birthmark, scar, etc. (provide photo, if any)** | | | | | |

## SECTION 2: PARENTS INFORMATION

Mother's Name:

Last ELDEMIRE          First JENELLE          Middle Initial D.

Alias: JEN   JAY SWEETIE

| Date of Birth (dd-mm-yyyy): 04 Oct 1982 | Place of Birth: JAMAICA UNIVERSITY OF WEST INDIES | Nationality: JAMAICA | Passport/Identity Card No., if any: N/LA 121779-467. SS# 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 |

Occupation: ENTREPRENUER; OWNER/MANAGER OF KIDZ-R-US

Habitual Residence (address): 6-9 CAROLYN CLOSE GRAHAM HEIGHTS. KINGSTON 6 Apt 13.

Telephone No.: 876-340-9527   917-682-0900

Email Address: eldemire.jenelle@gymail.com

Father's Name:

Last TAYLOR          First NICHOLAS          Middle Initial S

Alias: NICK

| Date of Birth (dd-mm-yyyy): 12-Apr-1979 | Place of Birth: ST. ANN JAMAICA | Nationality: JAMAICA. | Passport/Identity Card No., if any: N/LA 107533073 |

Occupation: CERTIFYING OFFICER INSPECTOR OF MOTOR VEHICLE

Habitual Residence (address): Apt 13, 6-9 CAROLYN CLOSE, GRAHAM HEIGHTS, KINGSTON 6.

Telephone No.: 1876-771-8516   929-355-8360

Email Address: acknieece@gmail.com

If married, please provide the date and place of marriage: OCTOBER 17, 2015.

## SECTION 3: APPLICANT REQUESTING RETURN OR ACCESS (INDIVIDUAL OR INSTITUTION THAT ACTUALLY EXERCISED CUSTODY BEFORE REMOVAL OR RETENTION)

Name of individual or institution seeking the return of or access to the child:

NICHOLAS S TAYLOR.

If applicant is an individual, please state:

| i. Date of Birth (dd-mm-yyyy): 12-April-1979 | ii. Nationality: JAMAICA | iii. Passport/Identity Card No., if any: 107533073 FP# A3146239. | iv. Occupation: INSPECTOR OF Motor VEHICLE CERTIFYING OFFICER |

Address of Applicant: 6-9 CAROLYN CLOSE. Apt 13 GRAHAM HEIGHTS, KINGSTON 6

Relation to child: FATHER

Name and address of Legal Adviser, if any: NEAL LEX ATTORNEY OF LAW
94C OLD HOPE ROAD KINGSTON
JAMAICA.

## SECTION 4: INFORMATION ON ALLEGED WRONGFULLY REMOVAL OR RETENTION (PLACE WHERE CHILD IS THOUGHT TO BE)

Name of person alleged to have wrongfully removed or retained the child:

Last ELDEMIRE          First JENELLE          Middle Initial D

Alias: JEN      JAH SWEETIE

If known, please state:

| i. Date of Birth (dd-mm-yyyy): CH-OCT. 1992 | ii. Nationality: JAMAICAN | iii. Passport/Identity Card No., if any: 121779-467 | iv. Occupation: ENTREPRENEUR |
|---|---|---|---|

Last known address: 4 DEVON ROAD APARTMENT #10, KINGSTON 10.

Description of the person alleged to have wrongfully removed or retained the child (provide photo, if any):

SEE PHOTO ENCLOSED

Address where child was removed to or is being retained: UNKNOWN.

## SECTION 5: PERSONS WITH INFORMATION RELATIING TO THE WHEREABOUTS OF THE CHILD (PREFERABLY IN COUNTRY OF CHILD'S CURRENT LOCATION):

| Name | Address | Telephone | Email |
|---|---|---|---|
| WAYNE ELDEMIRE | | 929-420-4401 | |
| JENNIFER ELDEMIRE | | 347-753-6581 | |
| CHRISTOPHER ELDEMIRE | | 786-599-9058 | chris4sure@gmail.com |

## SECTION 6: CIRCUMSTANCES OF THE WRONGFUL REMOVAL/RETENTION

Please provide the following information:

| i. Date of removal/retention: | ii. Time of removal/retention: | iii. Child's physical location at the time of wrongful removal or retention: |
|---|---|---|
| 23-March-2022 | 9:00am | 6 Devon Road Apt. 1C Kingston 10. |

Please elaborate on the circumstances of the wrongful removal or retention: On March 23, 2022 the Respondent took the children to school. In the afternoon I enquired whether I could pick them up. She said No. I asked to speak to them and she they were sleeping. She would not take my calls & became suspicious. I tracked her & noticed that her device was still being internationally supported and saw that he tracked and located in Florida. I knew nothing about the departure.

## SECTION 7: FACTUAL AND LEGAL JUSTIFICATION FOR THE REQUEST

Provide details related to the child's place of habitual residence (i.e. address, school, community involvement, etc.)

Day Care - 5a Brcompton Road Kingston. ~~whether I should pick them up. She said Not done~~

Please provide the following information:

| i. Were custody rights being exercised at the time of removal or retention? | ☐ Yes | ☑ No |
|---|---|---|

| ii. Supporting documentation: | |
|---|---|
| | ☐ Court order in effect at time of removal or retention |
| | ☐ Legally binding agreement |
| | ☑ Marriage Certificate |
| | ☑ Child's Birth Certificate |
| | ☐ Other |

| iii. Are civil proceedings currently in progress? | ☑ Yes | ☐ No |
|---|---|---|

iv. If yes, please provide details I filed a claim in the supreme court of Judicature of Jamaica on June 6, 2022 (Claim number SU 2022 FD 02294) in which I am seeking custody of Emma-Jane Tomlin. See court document attached.

## SECTION 8: PROPOSED ARRANGEMENTS FOR RETURN TRAVEL OF CHILD

Name of parent/caregiver: Nicholas S Tomlin

| Address | Telephone | Email |
|---|---|---|
| Apt 13 6-9 Caelyn Close Graham Heights Kingston 6 | 876 771-0516 | udomtoms@gmail.com. |

Person responsible for cost of travel: Nicholas Tomlin

## SECTION 9: OTHER RELEVANT INFORMATION

## SECTION 10: LIST OF DOCUMENTS ATTACHED

e.g. certified copy of relevant decision or agreement concerning rights of custody, affidavits as to the applicable law and information relating to the social background of the child, photos etc.

1) PHOTOS
2) JAMAICAN AND USA PASSPORTS (COPY)
3) BIRTH CERTIFICATE (COPY)
4) MARRIAGE CERTIFICATE
5) FATHER'S BIRTH CERTIFICATE
6) NATHANIEL'S BIRTH CERTIFICATE

7) COURT DOCUMENTS.
8) DRIVER'S LIC

## SECTION 11: AUTHORIZATION

I authorize the requested Central Authority and its agent(s) to act on my behalf and to do all things reasonable and necessary in connection with this application.

Date: 2022-JULY-20                Place: JAMAICA

Signature
and/or stamp of the
requesting Central Authority or applicant: _____

## SECTION 12: DISCLAIMER

This information solicited on this form is requested under the Children (Guardianship and Custody) (Amendment) Act, 2017.

The primary purpose for soliciting the information is to evaluate the applicant's claims under the Hague Convention on the Civil Aspects of International Child Abduction, advise applicants about available legal remedies and locate abducted child(ren).

The information will be used to assist in facilitating operations under the Convention and may be provided to governments of member countries, bar associations, local police, social service agencies and parents. This information may also be released on a need to know basis to other government agencies including foreign agencies having statutory or other lawful authority to gain access to such information.

While we hold your information in confidence, we may share your information with border control such as Passport Immigration and Citizenship Agency (PICA), Customs and the Judiciary.



## JAMAICA CENTRAL AUTHORITY (JCA)
## APPLICATION UNDER THE HAGUE CONVENTION
## ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION



**FILL OUT ALL SECTIONS**
*Provide information below to the extent that is available.
Please complete **ONE FORM** per child.

This is an application for the ☑ **Return** of ☐ **Access** to the child/children named herein.

**REQUESTING:**  ☑ INDIVIDUAL

☐ INSTITUTION

☐ CENTRAL AUTHORITY

**REQUESTED AUTHORITY:** US CENTRAL AUTHORITY

| SECTION 1: IDENTITY OF THE CHILD | | | | |
|---|---|---|---|---|
| **Child's Name:** | | | | |
| | Last TAYLOR | | First N█████ | Middle Initial S |
| **Age:** 4 | **Date of Birth (dd-mm-yyyy):** █████-2017 | **Place of Birth:** USA MARYLAND MONTGOMERY | **Nationality:** USA/ JAMAICA | **Passport/Identity Card No., if any:** USA#576W49476 JAMAICA C1312483 |
| **Habitual Residence ( address before removal or retention):** APT. 13, 6-9 CAROLYN CLOSE GRAHAM HEIGHTS. KINGSTON 6. | | | | |
| **Height:** | **Weight:** 38 lbs | **Colour of Hair:** BROWN | | **Colour of Eyes:** DARK BROWN |
| **Describe any other distinguishing feature(s) that may be helpful in identifying the child e.g. birthmark, scar, etc. (provide photo, if any)**  SCAR ON HIS HEAD. RIGHT SIDE SCAR ON HIS LEG: RIGHT SIDE | | | | |

## SECTION 2: PARENTS INFORMATION

Mother's Name:

Last ELDEMIRE-TAYLER    First JENELLE    Middle Initial D

Alias: JEN   JAY SWEETIE

| Date of Birth (dd-mm-yyyy): 04-Oct-1992 | Place of Birth: JAMAICA (UNIVERSITY OF WEST INDIES) | Nationality: JAMAICAN | Passport/Identity Card No., if any: D/C# 121779 467 SS# 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 |

Occupation: ENTREPRENEUR, OWNER/MANAGER OF KIDZ-R-US

Habitual Residence (address):

Telephone No.: 876-340-9567   917-672-5906   Email Address: eldemire.jenelle@gmail.com

Father's Name:

Last TAYLOR    First NICHOLAUS    Middle Initial S

Alias: NICK

| Date of Birth (dd-mm-yyyy): 12 April 1979 | Place of Birth: ST.ANN JAMAICA | Nationality: JAMAICAN | Passport/Identity Card No., if any: D/C# 1075330B |

Occupation: CERTIFYING OFFICER, INSPECTOR OF MOTOR VEHICLE.

Habitual Residence (address): 6-9 CAROLYN CLOSE, APT. 13 GRAHAM HEIGHTS KINGSTON 8

Telephone No.: 876-771-2516   922-355-2360   Email Address: adonirocco@gmail.com.

If married, please provide the date and place of marriage: OCTOBER 17, 2015.

## SECTION 3: APPLICANT REQUESTING RETURN OR ACCESS (INDIVIDUAL OR INSTITUTION THAT ACTUALLY EXERCISED CUSTODY BEFORE REMOVAL OR RETENTION)

Name of individual or institution seeking the return of or access to the child:

NICHOLAUS TAYLOR

If applicant is an individual, please state:

| i. Date of Birth (dd-mm-yyyy): 12 April 1979 | ii. Nationality: JAMAICAN | iii. Passport/Identity Card No., if any: 1075330B AC445829 | iv. Occupation: INSPECTOR OF MOTOR VEHICLE. CERTIFYING OFFICER |

Address of Applicant: 6-9 CAROLYN CLOSE, APT. 13. GRAHAM HEIGHTS. KINGSTON 8

Relation to child: FATHER

Name and address of Legal Adviser, if any: NEATLEX, ATTORNEYS OF LAW
94C OLD HOPE ROAD, KEN 6.
JAMAICA.

## SECTION 4: INFORMATION ON ALLEGED WRONGFULLY REMOVAL OR RETENTION (PLACE WHERE CHILD IS THOUGHT TO BE)

Name of person alleged to have wrongfully removed or retained the child:

Last ELDEMIRE          First JENELLE          Middle Initial D

Alias: JEN , JAY SWEETIE

If known, please state:

| i. Date of Birth (dd-mm-yyyy): | ii. Nationality: | iii. Passport/Identity Card No., if any: PG# 121779 4461. | iv. Occupation: |
|---|---|---|---|
| 04-OCT-1992 | JAMAICAN | | ENTREPRENUR |

Last known address: 4 DEVON ROAD, APARTMENT #10, KINGSTON 10.

Description of the person alleged to have wrongfully removed or retained the child (provide photo, if any):

SEE PHOTO ENCLOSED.

Address where child was removed to or is being retained: UNKNOWN.

## SECTION 5: PERSONS WITH INFORMATION RELATIING TO THE WHEREABOUTS OF THE CHILD (PREFERABLY IN COUNTRY OF CHILD'S CURRENT LOCATION):

| Name | Address | Telephone | Email |
|---|---|---|---|
| WAYNE ELDEMIRE | | 929-422-4301 | |
| JENNIFER ELDEMIRE | | 347.7536589 | |
| CHRISTOPHER ELDEMIRE | | 786.399.9030. | chris4june@gmail.com |

## SECTION 6: CIRCUMSTANCES OF THE WRONGFUL REMOVAL/RETENTION

Please provide the following information:

| i. Date of removal/retention: | ii. Time of removal/retention: | iii. Child's physical location at the time of wrongful removal or retention: 3 DEVON ROAD APT. 10 KINGSTON 10. |
|---|---|---|
| 23 - MARCH - 2022 | 9:00 AM | |

Please elaborate on the circumstances of the wrongful removal or retention: On March 23 2022. The Respondent took the children to school. In the afternoon I enquired whether I should pick them up. She said No. I asked to speak to them and said they were sleeping. she would not take my calls. I became suspicious. I tracked Nathaniel's tablet and saw that he was Sangster's International Airport. The device was later tracked that day and located in florida. I knew nothing of about their departure.

## SECTION 7: FACTUAL AND LEGAL JUSTIFICATION FOR THE REQUEST

Provide details related to the child's place of habitual residence (i.e. address, school, community involvement, etc.)

APT 13, 6-9 CORALYN CLOSE GRAHAM HEIGHTS, KINGSTON 6. - HOME
23 WINDSOR AVE, KINGSTON - SCHOOL
5A BROMTOM ROAD KINGTON - DAY CARE.

Please provide the following information:

i. Were custody rights being exercised at the time of removal or retention?  ☐ Yes  ☑ No

ii. Supporting documentation:
- ☐ Court order in effect at time of removal or retention
- ☐ Legally binding agreement
- ☑ Marriage Certificate
- ☑ Child's Birth Certificate
- ☐ Other

iii. Are civil proceedings currently in progress?  ☑ Yes  ☐ No

iv. If yes, please provide details  I FILED A CLAIM IN THE SUPREME COURT OF JUDICATURE OF JAMAICA ON JULY 6, 2022 (CLAIM NUMBER SU 2022 FD 02294) IN WHICH I AM SEEK CUSTODY OF NATHANIEL TAYLOR. SEE COURT DOCUMENTS ATTACHED.

## SECTION 8: PROPOSED ARRANGEMENTS FOR RETURN TRAVEL OF CHILD

Name of parent/caregiver:  NICHOLAUS S TAYLOR

| Address | Telephone | Email |
|---|---|---|
| APT. 13, 6-9 CARLYN CLOSE GRAHAM HEIGHTS, KINGSTON 6. | 1876- 771-8516 | adonizee@gmail.com |

Person responsible for cost of travel:  NICHOLAUS TAYLOR.

## SECTION 9: OTHER RELEVANT INFORMATION

## SECTION 10: LIST OF DOCUMENTS ATTACHED

e.g. certified copy of relevant decision or agreement concerning rights of custody, affidavits as to the applicable law and information relating to the social background of the child, photos etc.

1) PHOTOS
2) JAMAICAN & USA PASSPORTS (COPY)
3) EMMA - JAE'S BIRTH CERTIFICATES (COPY)
4) MARRIGE CERTIFICATE (COPY)
5) FATHER'S BIRTH CERTIFICATE.

① COURT DOCUMENTS.
② DRIVER'S LICENCE

## SECTION 11: AUTHORIZATION

I authorize the requested Central Authority and its agent(s) to act on my behalf and to do all things reasonable and necessary in connection with this application.

Date: 2022-July-28          Place: JAMAICA

Signature
and/or stamp of the
requesting Central Authority or applicant: _____

## SECTION 12: DISCLAIMER

This information solicited on this form is requested under the Children (Guardianship and Custody) (Amendment) Act, 2017.

The primary purpose for soliciting the information is to evaluate the applicant's claims under the Hague Convention on the Civil Aspects of International Child Abduction, advise applicants about available legal remedies and locate abducted child(ren).

The information will be used to assist in facilitating operations under the Convention and may be provided to governments of member countries, bar associations, local police, social service agencies and parents. This information may also be released on a need to know basis to other government agencies including foreign agencies having statutory or other lawful authority to gain access to such information.

While we hold your information in confidence, we may share your information with border control such as Passport Immigration and Citizenship Agency (PICA), Customs and the Judiciary.



# JAMAICA CENTRAL AUTHORITY (JCA)
## APPLICATION UNDER THE HAGUE CONVENTION
### ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION



**FILL OUT ALL SECTIONS**
*Provide information below to the extent that is available.
Please complete **ONE FORM** per child.

This is an application for the ☑ **Return** of ☐ **Access** to the child/children named herein.

**REQUESTING:**   ☑ INDIVIDUAL

   ☐ INSTITUTION

   ☐ CENTRAL AUTHORITY

**REQUESTED AUTHORITY:** US CENTRAL AUTHORITY

| SECTION 1: IDENTITY OF THE CHILD | | | | |
|---|---|---|---|---|
| **Child's Name:** | | | | |
| Last TAYLOR | | First E███ | | Middle Initial S |
| **Age:** 2 | **Date of Birth (dd-mm-yyyy):** ██-20█ | **Place of Birth:** USA WASHINGTON D.C. | **Nationality:** USA JAMAICA | **Passport/Identity Card No., if any:** USAPP964820-9297 JAMAICA C1591596 |
| **Habitual Residence ( address before removal or retention):** APT. 13 6-9 CAROLYN CLOSE GRAHAM HEIGHTS, KINGSTON 6. | | | | |
| **Height:** | **Weight:** 20-25 LBS | **Colour of Hair:** BROWN | | **Colour of Eyes:** DARK BROWN. |
| **Describe any other distinguishing feature(s) that may be helpful in identifying the child e.g. birthmark, scar, etc. (provide photo, if any)** | | | | |
| Click to upload a Photo | | | | |

## SECTION 2: PARENTS INFORMATION

**Mother's Name:**

Last ELDEMIRE    First JENELLE    Middle Initial D

Alias: JEN    JAY SWEETIE,

| Date of Birth (dd-mm-yyyy): 04 Oct-1992 | Place of Birth: JAMAICA UNIVERSITY OF WEST INDIES | Nationality: JAMAICA | Passport/Identity Card No., if any: D/La 121779-4857. SS# 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 |
|---|---|---|---|

Occupation: ENTREPRENEUR; OWNER/MANAGER OF KIDZ-R-US

Habitual Residence (address): 6-9 CAROLYN CLOSE GRAHAM HEIGHTS. KINGSTON 6 APT 13,

Telephone No.: 876-340-9524    917-622-0906    Email Address: eldemire.jenelle@gmail.com

**Father's Name:**

Last TAYLOR    First NICHOLAS    Middle Initial S

Alias: NICK

| Date of Birth (dd-mm-yyyy): 12-Apr-1979 | Place of Birth: ST. ANN JAMAICA | Nationality: JAMAICA. | Passport/Identity Card No., if any: D/La 107533073 |
|---|---|---|---|

Occupation: CERTIFYING OFFICER INSPECTOR OF MOTOR VEHICLE

Habitual Residence (address): APT 13, 6-9 CAROLYN CLOSE, GRAHAM HEIGHTS. KINGSTONE.

Telephone No.: 876-771-6516.    929-355-8360    Email Address: adenizee@gmail.com

If married, please provide the date and place of marriage: OCTOBER 17, 2015.

## SECTION 3: APPLICANT REQUESTING RETURN OR ACCESS (INDIVIDUAL OR INSTITUTION THAT ACTUALLY EXERCISED CUSTODY BEFORE REMOVAL OR RETENTION)

Name of individual or institution seeking the return of or access to the child:

NICHOLAS S TAYLOR

If applicant is an individual, please state:

| i. Date of Birth (dd-mm-yyyy): 12-APRL-1979 | ii. Nationality: JAMAICA | iii. Passport/Identity Card No., if any: 107533073 PP# A6441F829. | iv. Occupation: INSPECTOR OF MOTOR VEHICLE, CERTIFYING OFFICER |
|---|---|---|---|

Address of Applicant: 6-9 CAROLYN CLOSE. APT 13 GRAHAM HEIGHTS, KINGSTON 6

**Relation to child:** FATHER

**Name and address of Legal Adviser, if any:** NEAL LEX ATTORNEY OF LAW 94c OLD HOPE ROAD, KINGSTON JAMAICA.

## SECTION 4: INFORMATION ON ALLEGED WRONGFULLY REMOVAL OR RETENTION (PLACE WHERE CHILD IS THOUGHT TO BE)

**Name of person alleged to have wrongfully removed or retained the child:**

Last ELDEMIRE          First JENELLE          Middle Initial D

**Alias:** JEN          JAY SWEETIE

**If known, please state:**

| i. Date of Birth (dd-mm-yyyy): 04-OCT-1992 | ii. Nationality: JAMAICAN | iii. Passport/Identity Card No., if any: 121779-467 | iv. Occupation: ENTREPRENEUR |
|---|---|---|---|

**Last known address:** 4 DEVON ROAD, APARTMENT #10, KINGSTON 10.

**Description of the person alleged to have wrongfully removed or retained the child (provide photo, if any):**

SEE PHOTO ENCLOSED

**Address where child was removed to or is being retained:** UNKNOWN.

## SECTION 5: PERSONS WITH INFORMATION RELATIING TO THE WHEREABOUTS OF THE CHILD (PREFERABLY IN COUNTRY OF CHILD'S CURRENT LOCATION):

| Name | Address | Telephone | Email |
|---|---|---|---|
| WAYNE ELDEMIRE | | 929-422-4801 | |
| JENNIFER ELDEMIRE | | 347-753-6584 | |
| CHRISTOPHER ELDEMIRE | | 786-599-9050 | chris4sure@gmail.com |

## SECTION 6: CIRCUMSTANCES OF THE WRONGFUL REMOVAL/RETENTION

Please provide the following information:

| i. Date of removal/retention: | ii. Time of removal/retention: | iii. Child's physical location at the time of wrongful removal or retention: |
|---|---|---|
| 23-March-2022 | 9:00 am | 6 Devon Road Apt. 1C Kingston 10. |

Please elaborate on the circumstances of the wrongful removal or retention: On March 23, 2022 the Respondent took the children to school. In the afternoon, I enquired whether I should pick them up. She said No. I asked to speak to them and she they were sleeping. She would not take my calls, became suspicious. I tracked her and realised her device and saw that the device was at Kingston International Airport and saw that the device was located in Florida. I knew nothing about the departure.

## SECTION 7: FACTUAL AND LEGAL JUSTIFICATION FOR THE REQUEST

Provide details related to the child's place of habitual residence (i.e. address, school, community involvement, etc.)

DAY CARE - 5A BRIMTON ROAD KINGSTON.

~~Whether I should pick them up. She said Not about~~

Please provide the following information:

| i. Were custody rights being exercised at the time of removal or retention? | ☐ Yes | ☑ No |
|---|---|---|

| ii. Supporting documentation: | |
|---|---|
| | ☐ Court order in effect at time of removal or retention |
| | ☐ Legally binding agreement |
| | ☑ Marriage Certificate |
| | ☑ Child's Birth Certificate |
| | ☐ Other |

iii. Are civil proceedings currently in progress?   ☑ Yes   ☐ No

iv. If yes, please provide details I FILED A CLAIM IN THE SUPREME COURT OF JUDICATURE OF JAMAICA ON JULY 6, 2022 (CLAIM NUMBER SU 2022 FD 02294) IN WHICH I AM SEEKING CUSTODY OF EMMA-JANE TAYLOR. SEE COURT DOCUMENT ATTACHED.

## SECTION 8: PROPOSED ARRANGEMENTS FOR RETURN TRAVEL OF CHILD

Name of parent/caregiver: NICHOLAUS S TAYLOR

| Address | Telephone | Email |
|---|---|---|
| APT. 13 6-9 CHELSEA CLOSE GRAHAM HEIGHTS KINGSTON 6 | 876 771-8516 | udoni2005@gmail.com |

Person responsible for cost of travel: NICHOLAUS TAYLOR

## SECTION 9: OTHER RELEVANT INFORMATION

## SECTION 10: LIST OF DOCUMENTS ATTACHED

e.g. certified copy of relevant decision or agreement concerning rights of custody, affidavits as to the applicable law and information relating to the social background of the child, photos etc.

1) PHOTOS
2) JAMAICAN AND USA PASSPORTS (COPY)
3) BIRTH CERTIFICATE (COPY)
4) MARRIGE CERTIFICATE
5) FATHER'S BIRTH CERTIFICATE
6) NATHANIEL'S BIRTH CERTIFICATE

1. COURT DOCUMENTS.
2. DRIVERS LIC

## SECTION 11: AUTHORIZATION

I authorize the requested Central Authority and its agent(s) to act on my behalf and to do all things reasonable and necessary in connection with this application.

Date: 2022-JULY-20          Place: JAMAICA

Signature
and/or stamp of the
requesting Central Authority or applicant: _____

## SECTION 12: DISCLAIMER

This information solicited on this form is requested under the Children (Guardianship and Custody) (Amendment) Act, 2017.

The primary purpose for soliciting the information is to evaluate the applicant's claims under the Hague Convention on the Civil Aspects of International Child Abduction, advise applicants about available legal remedies and locate abducted child(ren).

The information will be used to assist in facilitating operations under the Convention and may be provided to governments of member countries, bar associations, local police, social service agencies and parents. This information may also be released on a need to know basis to other government agencies including foreign agencies having statutory or other lawful authority to gain access to such information.

While we hold your information in confidence, we may share your information with border control such as Passport Immigration and Citizenship Agency (PICA), Customs and the Judiciary.

United States Department of State

*Washington, D.C.   20520*

## Authorization to Release Case Information
### For use by the U.S. Department of State, Office of Children's Issues

I, NICHOLAUS S TAYLOR (name), the FATHER (relationship to child/ren) of the child/ren listed below, authorize the Office of Children's Issues to release information about myself and/or my minor child/ren to prospective and retained attorneys and mediators in the United States.

Name of child: N█████ S. TAYLOR   DOB: █████, 2017
Name of child: E█████ S. TAYLOR   DOB: █████ - 2019
Name of child: _____   DOB: _____

Is the child/ren a citizen of the United States?  ✓Yes ____No
Is the child/ren a permanent legal resident of the United States? ____Yes ____No

In the event that persons or organizations other than prospective attorneys request information regarding your child/ren's case, The Office of Children's Issues may release information to:

Family Members and/or Friends:  ✓Yes ___No

Please list full names and relationship to child:
NINA NOBL-JONES   COUSIN.
_____
_____

Media organizations   (newspaper, television, etc.)   ___ Yes ✓No
Members of the U.S. Congress                          ___ Yes ✓No

_____          28-Sray-2022
Signature                        Date

10/15



United States Department of State

*Washington, D.C.  20520*

Voluntary Return Letter Acknowledgement

Dear Applicant:

Pursuant to Article 7 of the 1980 Convention on the Civil Aspects of International Child Abduction (Convention), and to encourage voluntary resolutions to International Parental Child Abduction cases, the U.S. Central Authority often sends a Voluntary Return Letter to the parent currently living with the child informing him or her of the application for return of the child/ren to their habitual residence under the Convention.  The letter also provides general information about the Convention, explains our role as Central Authority, and informs the parent that if a voluntary resolution is not reached, court proceedings may be initiated by the other parent.

The U.S. Central Authority sends this letter as part of our regular process, but recognizes that sending such a letter may not be appropriate in all cases.  For this reason, we ask you to consider your family's circumstances and inform our office as to whether or not you would like us to send the letter.

Please note the decision to send the letter rests solely with the U.S. Central Authority.  Sending such a letter should not be considered a judgment by our office as to the merits of any particular case.  Should our office determine that it is appropriate under the Convention to send a Voluntary Return Letter in your case, we will provide you with a copy of the letter that is sent.

Please complete and sign the statement below.

I, ___Nicholaus S Taylor___ (applicant parent), ask the U.S. Central Authority to:

☐ Yes, send Voluntary Return Letter

☑ No, please DO NOT send Voluntary Return Letter.

to ___Jenelle D. Eldemire___ (parent with child) under the Hague Convention as a way to seek a voluntary resolution of my case.  If selecting "No" please explain the reason:

___She has commence proceeding for Divorce and censervatership___

___in Texas and so it is extremely urgent for proceedings to___

___be commence under the Hague Convision for the___

___return of the children to Jamaica for a Jamaican Court to___

___determine my application for custody.___

Signature _____     Date 28 Sep-2022.

United States Department of State

*Washington, D.C.   20520*

## Hague Convention Attorney Network Assistance, 2022
## Hague Convention on the Civil Aspects of International Child Abduction

Please review the **2022 Legal Assistance Income Guidelines** chart to determine your eligibility to request the U.S. Central Authority's assistance in identifying *pro bono* (free) or reduced fee legal representation for your Hague Convention case in the United States.

Complete and return this application to your Central Authority.  **Keep a copy for your records.**

| 2022 Legal Assistance Income Guidelines | | |
|---|---|---|
| | **PRO BONO**<br>*125% of 2022 U.S. poverty guidelines<br>48 contiguous states and the District of Columbia | **REDUCED FEE**<br>*200% of 2022 U.S. poverty guidelines<br>48 contiguous states and the District of Columbia |
| **Household size** | **Maximum annual income** | **Maximum annual Income** |
| 1 | $16,988 | $27,180 |
| 2 | $22,888 | $36,620 |
| 3 | $28,788 | $46,060 |
| 4 | $34,688 | $55,500 |
| 5 | $40,588 | $64,940 |
| 6 | $46,488 | $74,380 |
| 7 | $52,388 | $83,820 |
| 8 | $58,288 | $93,260 |

**Maximum annual income**.  This means your **total** annual income, **before taxes**, from **all sources**, converted to U.S. dollars.
**Household size**.  Count yourself, the child/ren about whom you have filed a Hague application, and others living with you.

My household size: _____ 3 _____  (The number should **not** be "1.")

My total annual income (before taxes): _____ (in my currency) OR in US $ 14,711.50 —

My occupation/employment: _INSPECTOR OF MOTOR VEHICLE / MINISTRY OF TRANSPORT_

Do you currently have an attorney in the United States for your Hague Convention case (or for a child custody/access case)?  NO ✓ YES ___  If YES, attorney's name/phone/email: _____ N/A _____

\*\*\*

Please review the income guidelines and read **IMPORTANT INFORMATION** on the next page before making your request. Consider your income **and** your assets.  It may be faster and easier to find an attorney if you can afford to pay some amount for legal services.  **Request only one option.**  I believe that I am eligible to request:

__✓__ *Pro Bono* **(free) legal assistance**  OR  _____ **Reduced fee legal assistance**  OR  _____ **A list of full fee attorneys**

Signature _Mary_                           Date _29. 2022. July._

Print your name _NICHOLAUS TAYLOR_         Email _adonileco@gmail.com_

Home phone _____  Mobile phone _771-8516_

## Hague Convention Attorney Network Assistance, 2022:  IMPORTANT INFORMATION

- The U.S. Central Authority may ask you for additional information to verify your eligibility to request assistance identifying *pro bono* (free) or reduced fee legal representation.

- If you are not forthcoming or in error in your self-assessment as determined by a legal aid organization or private attorney reviewing your case, the U.S. Central Authority may limit any further assistance in helping you find legal representation.

- Legal representation may be offered by attorneys in private practice, by attorneys working for legal aid organizations, and by law professors and law students working under their supervision. **There is no guarantee that an attorney will take your case. There is no entitlement to receive *pro bono* or reduced fee legal assistance in a Hague Abduction Convention case.**

- **Eligibility for *pro bono* or reduced fee legal assistance**:  We ask you to assess your eligibility for legal assistance based on total annual income, before taxes, from **all** sources (which includes members of your household who contribute to the support of the family unit).  Be prepared to provide more detailed financial information to attorneys that may require it to determine if you meet **their** criteria for *pro bono* or reduced fee legal services.

  In order to qualify for free legal assistance from most legal aid organizations, your total income **and assets** must be below a certain level. Legal aid organizations may also consider program priorities in deciding whether to accept a case. Attorneys in private practice likewise may ask about assets (*e.g.*, bank accounts, stocks, bonds, houses, cars, and other real and personal property), and for a copy of your tax return. They may offer you *pro bono* (free), reduced fee, or full fee representation depending on your financial situation. The Department of State plays **no** role in setting, negotiating, collecting, or anything else related to fees.  If you can afford reduced fee or full fee legal assistance based on your income and assets, check the appropriate box.

- **Attorney fees**:  Legal aid organizations provide free legal services.  Private attorneys may represent you *pro bono* (for free) or charge fees for their services.   Fee arrangements are strictly between you and the attorney.  The Department of State plays **no** role in setting, negotiating, collecting, or anything else related to fees.  If you would like general information about reduced fees, please visit the Department of State website, https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/for-providers/laws/hague-abduction-convention-legal-representation-options.html.

- **Costs and expenses**: Litigation often includes costs and expenses in addition to attorney fees.  Ask attorneys about any costs and expenses associated with your case that you may be expected to pay.  The Department plays no role in the construction or negotiation of fees or costs.

  Legal aid organizations may cover some or all of the costs and expenses associated with your Hague Convention case.  Most private attorneys will expect you to pay costs and expenses even when they provide their legal services *pro bono* (for free) or for reduced fees.  You should expect to pay costs and expenses in full fee cases.

  Costs and expenses may include, but are not limited to, filing fees, service of process on the other party, phone calls, travel expenses, document duplication, translations, and expert witnesses. For appellate cases, trial transcripts may be an additional expense. Costs and expenses may be as much as $1000 or more, and may vary depending on the particular case.  Courts may waive filing fees and service-related costs based on need.  You may be able to recover the costs and expenses you paid, and attorney fees, if a court orders your child returned to his/her country of habitual residence.

- The "2022 Legal Assistance Income Guidelines" are based on Legal Service Corporation ("LSC") maximum income levels for individuals eligible for legal assistance.  LSC typically updates the guidelines annually to reflect annual amendments to Federal Poverty Guidelines.  The guidelines are published in the Code of Federal Regulations, 45 CFR Part 1611, Appendix A.  The Federal Register notice of the 2022 income guidelines (87 FR 4817, Jan. 31, 2022) is available at http://www.federalregister.gov/documents/2022/01/31/2022-01922/income-level-for-indviduals-eligible-for-assistance.
  *The tables on the chart are for the 48 contiguous states and the District of Columbia.  Special tables for Hawaii and Alaska are available on the website.





OBSERVATIONS AND EXTENSIONS

PASSPORT
PASSEPORT
PASAPORTE

JAMAICA

TYPE / TYPE/TIPO    COUNTRY CODE / CODE DU PAYS/CODIGO DEL PAIS
P        JAM

PASSPORT NO. / Nº DU PASSEPORT/Nº DE PASAPORTE
C1812483

SURNAME / NOM/APELLIDOS
TAYLOR

GIVEN NAMES / PRÉNOMS/NOMBRES
NA

NATIONALITY / NATIONALITÉ/NACIONALIDAD
JAMAICAN

DATE OF BIRTH / DATE DE NAISSANCE/FECHA DE NACIMIENTO
2017

OCCUPATION / FONCTION/OCUPACIÓN
N/A

SEX / SEXE/SEXO
M

PLACE OF BIRTH / LIEU DE NAISSANCE/LUGAR DE NACIMIENTO
MARYLAND, USA

PLACE OF ISSUE / LIEU D'EMISSION/LUGAR DE EMISIÓN
KINGSTON

DATE OF ISSUE / DATE DE DELIVRANCE/FECHA DE EMISIÓN
12 SEP 2018

SIGNING AUTHORITY / SIGNATURE DE L'AUTORITÉ COMPÉTENTE
FECHA DE LA AUTORIDAD

DATE OF EXPIRY / DATE D'EXPIRATION/FECHA DE VENCIMIENTO
11 SEP 2023

P<JAMTAYLOR<<NATHANIEL<SAINT<LUKE<<<<<<<<<<<
C1812483<7JAM1712173M2309110B29<T1751<<<<<50









OBSERVATIONS AND EXTENSIONS

PASSPORT
PASSEPORT
PASAPORTE

JAMAICA

TYPE / TYPE / TIPO        COUNTRY CODE  / CODE DU PAYS / CODIGO DEL PAIS        PASSPORT NO.  / No. DU PASSEPORT / No. DE PASAPORTE
P        JAM        C1897596

SURNAME  / NOM / APELLIDOS
TAYLOR

GIVEN NAMES  / PRÉNOMS / NOMBRES
E█████

NATIONALITY  / NATIONALITÉ / NACIONALIDAD        DATE OF BIRTH  / DATE DE NAISSANCE / FECHA
JAMAICAN        2019

OCCUPATION  / FONCTION / OCUPACIÓN        SEX / SEXE / SEXO
N/A        F

PLACE OF BIRTH  / LIEU DE NAISSANCE / LUGAR DE NACIMIENTO        PLACE OF ISSUE  / LIEU D'EMISSION / LUGAR DE EXPEDICIÓN
WASHINGTON DC, USA        KINGSTON

DATE OF ISSUE  / DATE DE DELIVRANCE / FECHA DE EMISIÓN        SIGNING AUTHORITY  / SIGNATURE DE L'AUTORITÉ COMPÉTENTE
02 JUN 2020        / FIRMA DE LA AUTORIDAD

DATE OF EXPIRY  / DATE D'EXPIRATION / FECHA DE VENCIMIENTO
01 JUN 2025

P<JAMTAYLOR<<EMMA<JAE<SAINT<CLARE<<<<<<<<<<<
C1897596<5JAM1908011F2506012B29<T1920<<<<<92





**VIEW PRESENCE OF WATERMARK    HOLD TO LIGHT TO VIEW**

# STATE OF MARYLAND
## Department of Health and Mental Hygiene
### Division of Vital Records

## CERTIFICATE OF LIVE BIRTH

File No. 2017-00-65060

| | | |
|---|---|---|
| 1. CHILD'S NAME (First, Middle, Last, Suffix) <br> N█████ ████████ Taylor | | |
| 2 TIME OF BIRTH (24 hr) <br> 09:19 | 3. SEX <br> Male | 4. BIRTHWEIGHT <br> 9 lbs 6 oz |
| 5. DATE OF BIRTH (Mo/Day/Yr) <br> ████████, 2017 | | 6. COUNTY OF BIRTH <br> Montgomery |
| 7a. MOTHER'S LEGAL NAME AT TIME OF CHILD'S BIRTH <br> Jenelle De'Andra Eldemire | | |
| 7b. MOTHER'S NAME PRIOR TO FIRST MARRIAGE <br> Jenelle De'Andra Eldemire | | |
| 8. MOTHER'S AGE <br> 25 | 9. BIRTHPLACE (State, Territory, or Foreign Country) <br> Jamaica | |
| 10a. FATHER'S CURRENT LEGAL NAME <br> Nicholaus Saint Martin Taylor | | |
| 10b. FATHER'S AGE <br> 38 | 10c. BIRTHPLACE (State, Territory, or Foreign Country) <br> Jamaica | |
| 11. DATE FILED BY REGISTRAR <br> December 19, 2017 | | |

This is to certify that this is a true and correct abstract of the official record on file in the Maryland Division of Vital Records.

1684783

_Geneva S. Sparks_

Geneva G. Sparks
State Registrar

12/21/2017

Date Issued

DO NOT ACCEPT UNLESS ON SECURITY PAPER WITH SEAL
OF VITAL RECORDS CLEARLY EMBOSSED.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE



# GOVERNMENT OF DISTRICT OF COLUMBIA
## DEPARTMENT OF HEALTH
### WASHINGTON D.C.
## CERTIFICATE OF LIVE BIRTH

FILE DATE: **AUGUST 07, 2019**

FILE NUMBER: **108-2019-007668**

CHILD'S NAME: **E███ TAYLOR**

DATE OF BIRTH: ███, **2019**

TIME OF BIRTH: **9:29 AM**

SEX: **FEMALE**

WEIGHT: **9 LBS., 4 OZ.**

PLACE OF BIRTH: **WASHINGTON HOSPITAL CENTER**

MOTHER'S NAME: **JENELLE DEANDRA ELDEMIRE-TAYLOR**

MOTHER'S SURNAME: **ELDEMIRE**

MOTHER'S PLACE OF BIRTH: **JAMAICA**

DATE OF BIRTH OR AGE: ███**1992**

FATHER/PARENT'S NAME: **NICHOLAUS SAINT MARTIN TAYLOR**

FATHER/PARENT'S PLACE OF BIRTH: **JAMAICA**

DATE OF BIRTH OR AGE: ███**1979**



This is to certify that this is a true and correct reproduction or abstract of the official record filed with the Vital Records Division, Department of Health, District of Columbia.

DATE ISSUED **AUGUST 14, 2019**

Terra J. Abrams, MBA
State Registrar

WARNING: IT IS UNLAWFUL TO MAKE COPIES OF THIS DOCUMENT AND PRESENT THEM AS OFFICIAL COPY OF AN ORIGINAL CERTIFICATE.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

080602704033/R1/2015 CERTIFICATION OF VITAL RECORD

# JAMAICA

## Registrar General's Department

### MARRIAGE REGISTER

Issue Date : 15th February, 2016
Book No. : 14
Marriage No. : 81

Marriage solemnized between

NICHOLAUS SAINT MARTIN TAYLOR ***          JENELLE DEANDRA ELDEMIRE ***

Groom's Name                    and                    Bride's Name

| | Groom | Bride |
|---|---|---|
| Condition: | BACHELOR | SPINSTER |
| Calling: | ENGINEER | BANKER |
| Age: | 36 YEARS | 23 YEARS |
| Residence: | 6 CARLYN CLOSE | 5A BROMPTON ROAD |
| | nil | KINGSTON 5 |
| Parish: | ST. ANDREW | ST. ANDREW |
| Father's Name: | EVERTON SAINT MARTIN TAYLOR *** | WAYNE ELDEMIRE *** |

On this: SEVENTEENTH OCTOBER, 2015

Married at: OUR LADY OF PERPETUAL HELP CHURCH

in the parish of ST. ANN

By (or before) me DONALD CHAMBERS ***, (Signed)

a Marriage Officer in the Island of Jamaica by MINISTER'S LICENCE

This marriage was celebrated between us in the presence of :

Signed Witness (a) LATOYA HIBBERT ***                    Signed Groom

Signed Witness (b) LYNDON LATORE ***                    Signed Bride

Last line of Vital Data

Deirdre English Gosse



